314 So.2d 527 (1975)
Robert H. CARR et ux., Plaintiffs-Appellees,
v.
CITY OF BATON ROUGE et al., Defendants-Appellants.
No. 10261.
Court of Appeal of Louisiana, First Circuit.
May 21, 1975.
Rehearing Denied June 30, 1975.
Writ Refused September 17, 1975.
*528 John R. Sheppard, Asst. City-Parish Atty., and Joseph F. Keogh, City Parish Atty., Baton Rouge, for defendants-appellants.
Charles S. McCowan, Jr., Baton Rouge, for plaintiffs-appellees.
Before SARTAIN, ELLIS and BARNETTE, JJ.
SARTAIN, Judge.
Defendants bring this appeal from a judgment rendered in favor of plaintiffs for damages sustained by them as a result of the backup of sewer effluent into their home on October 26, 1972. Plaintiffs have answered the appeal asking that the award be increased. We affirm as to liability and amend to increase the award.
On the night of the incident giving rise to this litigation, Mrs. Carr and her neighbor complained to the Sanitary Sewer Division of the Department of Public Works of the City of Baton Rouge and the Parish of East Baton Rouge, that they were experiencing difficulty with their commodes which were overflowing. Mr. David Gomez, Maintenance Foreman in the Sewer Division, was dispatched to plaintiffs' home to ascertain and rectify the difficulty. He determined that the problem was in the main sewer line located to the rear of plaintiffs' home.
A crew from the Department was called by Mr. Gomez. Under his supervision a high pressure water nozzle was employed in an effort to dislodge the obstruction. This procedure proved unsuccessful and Mr. Gomez decided to wait until the next morning because it was going to be necessary to dig up the line and physically remove the obstruction. When he returned to his home Mrs. Carr called to report that her problem had worsened.
The next morning Mr. Gomez's crew dug up a portion of Oakley Drive and discovered that a section of the main sewer line beneath the street was completely crushed. Oakley Drive is located one block west of plaintiffs' property.
Plaintiffs contend that the use of the water nozzle and the placing of three thousand *529 gallons of water in the main sewer line under the existing conditions constituted negligence under C.C. Art. 2315; and, alternatively, plaintiffs are entitled to damages under the theory of liability without fault found in C.C. Arts. 660 and 667.
Defendants argue that the action of Mr. Gomez was proper and that the evidence in the record dictates that plaintiffs failed to prove that the water from the high pressure water nozzle caused the damage complained of. Defendants did not address themselves to the applicability of C.C. Art. 667.
The trial judge, in his oral reasons for judgment, stated that even in the absence of negligence, plaintiffs were entitled to recover under C.C. Art. 667.
We are of the opinion that C.C. Art. 667 is applicable and warrants judgment in favor of the plaintiffs. The record does not support a holding founded on negligence. Mr. Gomez inserted the water nozzle in an empty manhole west of plaintiffs' home. He chose this manhole because the one east of plaintiffs' home was full of sewerage. He correctly calculated that the blockage in the main line was between plaintiffs' home and the empty manhole. Further, because of the crushed condition of the main line, very little, if any, water could have gotten into the full line thereby causing or even aggravating the situation.
C.C. Art. 667 provides:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
The main line with which we are concerned is situated on an eight foot servitude located along plaintiffs' rear property line. The operation and maintenance of this line is admittedly the responsibility of defendants. Thus, they are proprietors within the intent of C.C. Art. 667. Sharon v. Connecticut Fire Insurance Company, 270 So.2d 900 (1st La.App., 1973), writs refused, 275 So.2d 788, and Hamilton v. City of Shreveport, 180 So.2d 30 (2 La. App., 1965) writs refused, 248 La. 700, 181 So.2d 399 (1966).
While the record does not contain any evidence as to who actually constructed the main sewer line, we must conclude that it became a work of the defendants when, if not built by them, the same was accepted and maintained by the defendants. A plat of the sanitary sewer system for the subdivision in which plaintiffs reside is contained in the record and clearly denotes the servitude and prescribes the requirements which must be adhered to when individual property owners connect their own lines to the main line.
As stated in Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.,1973), the burden of proving a causal relation between the work of the proprietor and the damage to a neighbor rests with the neighbor. It is obvious that the crushed line caused plaintiffs' damage.
In considering this relation we are mindful of Professor Ferdinand Fairfax Stone's comment (40 T.L.R. 701 at 705-6):
"The important thing is that these are only illustrations of the type of `works' which at the time of the adoption of the Code could be expected to damage one's neighbor. The listing was never intended to be exclusive. The list grows as the society develops. The world of the Romans or that of Domat did not contemplate the use of dynamite in conducting geophysical explorations, the use of pile-driving equipment to prepare afoundation for buildings, the operation of jet-planes over residential areas, the dusting of crops by airplanes, the operation of huge factories, the storing or use of radioactive materials. As man's ingenuity *530 in creating works upon his lands and in conducting operations thereon has increased, so has his capacity to cause harm to his neighbors, with the corresponding necessity for regulation in the interest of the good of all.

Thus the Louisiana courts have extended the protection of article 667 to such post-1825 activities as the operation of railway terminal facilities, pile-driving operations, subterranean explosions in connection with oil exploration and production, and the aerial dusting of crops with insecticides." (Emphasis ours, citations omitted)
It is equally apparent to us that the operation of a sanitary sewer system in an urban society was not contemplated.
Professor Stone, recognizing that C.C. Art. 667 should be adapted to conditions as they exist today, states that some consideration should be given to the defenses available to a proprietor, 40 T.L.R. 701, 713. Our jurisprudence is silent on the subject because the issue has yet to be presented for appellate review.
The record in this cause contains many examples of conditions which create stoppages within an existing sewer system. It is for this reason that we address ourselves to the issue of defense. This issue can best be resolved on a case by case method where the facts of a given case will dictate the result. Recognizing that a particular set of facts may warrant a finding for the proprietor, the proprietor should bear the burden of proof to justify his exculpation.
In the case at bar, plaintiffs have satisfied the requirements of proof imposed upon them to-wit: The defendants, as proprietors, and plaintiffs are neighbors; the work (the main sewer line) is an activity of the proprietors; and, plaintiffs have established a causal relation between damage to their home and the defendants' work. Lombard v. Sewerage and Water Board of New Orleans, supra.
On the other hand, defendants have failed to establish any facts which would tend to relieve them from liability.
We now turn to the question of damages. As stated above, the plaintiffs answered the appeal asking that the judgment of the district court be amended to award them damages for "mental anguish, worry, tension and inconvenience" in the amount of $1,000.00 for Mr. Carr and $1,500.00 for Mrs. Carr. The trial judge awarded plaintiffs the sum of $956.30, which is the actual amount it cost to remove the old carpet and replace it with carpet of similar quality. He obviously rejected their demands for mental anguish, etc. Mrs. Carr testified in detail as to the ordeal which ensued and the efforts on her part to cope with the problem. She mopped and endeavored to clean up the effluent in her home until two or three o'clock the next morning. It was a very trying and unpleasant experience. Under these circumstances, we think she is entitled to the sum of $500.00. Mr. Carr did not testify in these proceedings and his claim for such damages is rejected. See Professor A. N. Yiannopoulos' "Violations of the Obligations of Vicinage: Remedies Under Articles 667 and 669", 34 L.L.R. 475, 479.
Accordingly, for the above reasons, the judgment of the district court is amended to award Mrs. Ruth G. Carr, individually, the sum of Five Hundred and 00/100 ($500.00) Dollars, together with legal interest thereon from the date of judicial demand, until paid. In all other respects, the judgment is affirmed.
All such costs as are permitted by law are to be borne by the defendants.
Amended and affirmed.