AUGUSTINE, Judge.
This is the second appeal in this case which stems from a judgment in which the trial court held that the defendants, purchasers of certain property located in St. Bernard Parish, failed to prove the payment of the agreed upon cash price of $6,000 to the vendor.
This suit was initiated by Bobby Nunez to rescind the sale of a tract of land and a residence to Kenneth and Gladys Nunez. The suit was based on allegations that Kenneth and Gladys threatened and coerced Bobby to sell the house and land to them and thereafter, failed to pay him the purchase price. The plaintiff lived in the house located on the St. Bernard property prior to 1965. In the same year, the house in which the defendants (the brother in law and sister of Bobby) lived was destroyed by Hurricane Betsy. Gladys and Kenneth moved into plaintiff’s residence in St. Bernard Parish approximately one year later. Bobby then moved into a trailer located on the same tract of land. Gladys and Bobby agreed that he would sell the property to Gladys at some undetermined point in the future. In the meantime, the defendants paid a nominal amount of rent and repaired some of the damage done by Hurricane Betsy.
In 1976, Bobby wanted to purchase some other land, so he approached the defendants with an offer to sell the land and house for $6,000. But since Gladys was apprehensive about getting loan approval for the entire purchase price, Bobby permitted Gladys and Kenneth to devise a suitable plan and the act of sale was drafted by their attorney. The act of sale recited the consideration of $14,000 which covered the amount of rent and repairs during the ten years Gladys and Kenneth lived on the property, plus $6,000 in cash. However, Bobby, Kenneth, and Gladys each testified that no money changed hands at the act of sale and that each signed the authentic act separately.[1] The witnesses to the authentic act corroborated their testimony.
Gladys and Kenneth claim to have paid plaintiff $6,000 in $100 bills in August of 1976. Allegedly, the defendant obtained a personal loan from Joseph Lloyd Kanner and gave the money to Bobby prior to the act of sale. However, Mr. Kanner did not testify nor did anyone who might have witnessed the cash transaction. Kenneth stated that he gave the money to plaintiff while Gladys was present and that Bobby did not give them a receipt. Bobby, however, declared that no money was ever given to him although he had made several requests for payment. When he finally demanded to be paid, he said, the defendants responded by beating him and evicting him from the premises.
The court noted that the defendants did not employ the affirmative defense of payment, which must be specifically pleaded, but instead gave general denials to the allegations contained in plaintiff’s petition. The special defense of payment would have placed upon the defendants the burden of proving payment. The trial court found that there was a verbal agreement to sell the property, manifested by the act of sale, but the testimony on the payment of the purchase price was conflicting and unclear. The trial court was of the opinion that Mr. Kanner’s testimony would have been conclusive on this issue. The trial court found that since Mr. Kanner was not present to contradict the testimony of the defendants, it was more probable that the defendants paid Bobby $6,000, and thus the plaintiff failed to carry his burden of proving by a *684 preponderance of the evidence that the money was not paid.
The plaintiff thereafter appealed the judgment alleging that the trial court misapplied the burden of proof. He asserted that the burden of proving payment rested on the defendants since they sought to exonerate themselves by extinction of the obligation. This court agreed and held that “once the purchasers conceded that the receipt in their deed was untrue and invalid (and that the deed did not reflect the true price) and that they did not pay any of the price at the time of the cash deed’s execution, it became the purchaser’s burden to show that they had, nevertheless, paid the price in fact agreed upon.” 396 So.2d 415 at 416. This court stated that the evidence does not clearly establish whether or not payment was made and since the trial court had also expressed this doubt and would have found Mr. Kanner’s testimony conclusive, the case was remanded specifically to allow Mr. Kanner to testify and to admit any other evidence on payment of the purchase price.
On remand, the defendants once again testified that they paid Bobby $6,000 in $100 bills in August 1976. Terry Nunez (brother to Gladys and Bobby) testified that one morning he was in the kitchen with Gladys drinking coffee when Bobby came into the house. After brief salutations, Gladys left the room. When she returned she handed to Bobby a stack of dollar bills in $100 denominations. In return, Bobby gave Gladys a blue paper which, to Terry, appeared to be a title or deed.[2] The testimony of Terry Nunez directly contradicts Kenneth’s testimony at the first trial wherein Kenneth stated that the only persons present to witness the cash exchange were himself, Gladys and Bobby. There were further contradictions: according to Terry, this transaction occurred in February 1976 (give or take three months) during trapping season. Mrs. Nunez, however, insists that it occurred in late August or early September. The testimony of the others failed to shed any light on the issue of whether or not the money changed hands, and contrary to the suggestion made by this court, Mr. Kanner again did not testify.
The trial court rendered judgment in favor of the plaintiff, reasoning that since this court had placed the burden on the defendants to produce proof of payment of the $6,000 and to produce the testimony of Joseph Kanner, the defendant’s failure to produce such evidence should result in a verdict for the plaintiff.
The defendants filed a motion for a new trial alleging that Mr. Kanner was now available and able to testify that he lent the money to the Nunezes. The motion was denied. Defendants then instituted this appeal claiming error by the trial judge in not granting a new trial on the grounds that the witness was currently available. In addition, the defendants allege that the trial court misinterpreted this court’s opinion in ruling that Mr. Kanner’s testimony would be required in order for the defendants to prevail.
We find no error in the judgment of the trial court and hereby affirm.
Mr. Kanner was not present to testify and no attempt was made to obtain his testimony. He was not subpoenaed at the second trial nor was a continuance of the trial sought for the purpose of securing his presence. At the first trial the defendants alleged that they borrowed $6,000 from Mr. Kanner for the purpose of paying Bobby. In its original judgment, the trial court said Mr. Kanner’s testimony would have been conclusive evidence on this issue. On appeal, this court gave the defendants another opportunity to present Mr. Kanner’s testimony. Since the defendants failed to subpoena Mr. Kanner or make any other attempts to secure his testimony, we apply the well-known rule that the unexplained failure of a party to call a witness who possesses peculiar knowledge of material facts pertinent to the resolution of the litigation entitles the opposing party to the *685 presumption that the witness s testimony would be unfavorable. Morgan v. Mattlack, Inc., 366 So.2d 1071 (La.App. 1st Cir. 1979), writ denied, 369 So.2d 1352.
The judgment in favor of the plaintiff following remand was based on the fact that absolutely no additional evidence concerning payment of the $6,000 was presented. The trial court had the benefit of viewing all the witnesses and listening to the testimony at both trials, and resolved issues of credibility in favor of the plaintiff. The court determined that the defendants had not met their burden of proving payment. We cannot find that the judgment of the trial court was manifestly erroneous.
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.

. According to the jurisprudence of this state set forth in Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir.1978), on rehearing, 374 So.2d 684, all the law requires for the validity of an authentic act is that the notary and witnesses be present when each contracting party signs the act, and that the notary and witnesses sign the act, although not necessarily at the time that any party signs it. It is not invalid because the parties did not execute the act in the presence of each other.

. There is good reason to question whether the paper allegedly given to Gladys by Bobby was in fact title to the property, for no such document was introduced into the record.