463 So.2d 689 (1985)
Mabel Franklin, Wife of/and Clarence R. BARLEY, Sr.
v.
STATE of Louisiana, Through the STATE DEPARTMENT OF HIGHWAYS and Boh Bros. Construction Company, Inc.
No. CA-2139.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1985.
*690 Lee W. Rand, Zelden & Zelden, New Orleans, for plaintiffs-appellees Mabel Franklin, Wife of/and Clarence R. Barley, Sr.
Harvey Lee Hall, Dept. of Transp. and Development, Baton Rouge, for defendant-appellant State of Louisiana, through the Dept. of Transp. and Development.
H.F. Foster, III, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for defendant-appellee Boh Brothers, Const. Co., Inc.
Before KLEES, CIACCIO and WARD, JJ.
KLEES, Judge.
This is an appeal by the State of Louisiana from a judgment awarding $22,457.00 to plaintiffs for damage to their home allegedly caused by the construction of a section of interstate highway known as the Carrollton Interchange. The State appeals on the grounds that the plaintiffs failed to adequately prove causation, and that the amount of damages awarded was excessive. We affirm.
Plaintiffs brought suit in the Orleans Parish Civil District Court against the State of Louisiana and Boh Brothers Construction *691 Company alleging that the construction of the Carrollton Interchange near their home in 1975-76 caused their house to settle dramatically, cracking the walls and floors significantly. After a trial on the merits, the court rendered judgment in favor of plaintiffs against the State and Boh Brothers. Then, upon application of Boh Brothers, the court granted a new trial limited to oral argument only and rendered a new judgment, which dismissed the plaintiffs' claim against Boh Brothers but maintained the judgment against the State. Boh Brothers was dismissed. Neither the plaintiffs nor the State has appealed the dismissal of Boh Brothers; therefore, the only issue in this appeal is the plaintiffs' judgment against the State.
At the outset, we note that the usual appellate standard of reviewthat is, whether the factual findings of the lower court are manifestly erroneousdoes not apply in this case because the judge who heard the testimony was not the one who rendered judgment. Moore v. Travelers Indemnity Co., 352 So.2d 270, 272 (La.App. 2nd Cir. 1977), writ den. 354 So.2d 1049 (La.1978). Because the judge who presided over the trial of this case resigned before handing down a judgment, the judgment was rendered by a second judge upon examination of the record. Therefore, rather than looking for manifest error, we must determine whether plaintiffs have proved the elements of their case by a preponderance of the evidence.
Plaintiffs sued under Civil Code article 667, which states that the proprietor of an estate cannot do any work on his property that causes damage to his neighbor. It is well established that in order to recover under this article, the plaintiff need not prove negligence, but only that the activity complained of caused damage to his property. Chaney v. Travelers Ins. Co., 249 So.2d 181, 186 (La.1971). Thus, there are only two elements that must be established to effect recovery in this case: causation and damages. We find that the plaintiffs have proved both sufficiently.
The plaintiffs, Mr. and Mrs. Barley, were the only fact witnesses to testify on the issue of causation. They both testified that the damage to their home, consisting of large cracks in the walls and floor as well as ponding of water under the house during rain, first appeared during the time when the State admittedly was engaged in the construction of the Carrollton Interchange near plaintiffs' house. The construction activity included, at various times, the demolition and removal of a house and concrete slab a few feet from the plaintiffs' residence; pile driving approximately 100 feet from the residence; and the movement of heavy contracting equipment back and forth down plaintiffs' street, from which the pavement had been removed.
Mrs. Barley testified that her house would "shake something terrible" while the construction activity was going on and that her dishes would rattle in the cabinets to the extent that, if she had opened the cabinet door, they would have all crashed to the floor. The plaintiffs also introduced photographs showing the extent of the damage to their home. Finally, they testified that during the years between 1966, when they purchased their home, and the onset of the construction project, they had noticed no settling, cracking or shifting of the walls in their house.
Mr. Robert Lipp, an expert in civil engineering who testified on behalf of the Barleys, stated that his examination of the house and review of the construction diaries and plans provided by the State convinced him that the construction activity had caused the damage to the residence. The defendants produced as witnesses several employees of Boh Brothers and the State Department of Transportation who testified as to the exact nature and location of the work done; additionally, these witnesses gave expert testimony to the effect that, in their opinions, the type of work done would not have caused damage to the plaintiffs' residence. The defendants also introduced photographs of other houses in the Barley's neighborhood to show that differential settlement was common in the *692 area. Finally, to controvert Mr. Lipp's testimony, the defendants produced John L. Pfeffer, an expert in civil engineering, who inspected the Barley's home and concluded that the damage was not due to the construction activity. Mr. Pfeffer stated that the paint he found inside many of the cracks indicated that the cracks had been in existence and had perhaps been patched sometime prior to the last time the house was painted, which, according to the Barleys, was in 1974. In the opinion of Mr. Pfeffer, the settlement of the Barley's house was typical of houses in the area and was caused by the general shrinkage of the soil that had been occurring since the drainage of the New Basin Canal many years before this construction project began.
After reviewing all the testimony on the issue of causation, we find that plaintiffs have proved by a preponderance of the evidence that the construction activity caused the damage to their house. Mr. and Mrs. Barley's testimony that the cracks first appeared while the construction project was going on is uncontroverted. The State has admitted in its brief that it is not claiming that the Barleys were lying. Even assuming that some of the cracks had been patched prior to 1966 when the Barleys bought the house, we find that the State would be liable for causing them to reopen, when they might have otherwise remained closed indefinitely. The trial judge apparently rejected the contrary conclusion of defendant's expert Mr. Pfeffer and so do we. Thus considering all the evidence, we conclude that the plaintiffs have met their required burden of proof in establishing causation.
We also find that plaintiffs have met their burden of proof with regard to quantum. The plaintiffs' expert, Mr. William Carroccio, estimated that the necessary repairs to the house would cost $23,657.00 and suggested that a 15% contingency be added to cover unforeseen problems that might occur, such as the replacement of any sills too badly warped to be straightened out. The lower court awarded plaintiffs $22,457.00, rejecting the 15% contingency and deducting from the original estimate $1200.00 for restoring the plantings around the Barley's house, which sum Mr. Carroccio admitted was based upon speculation.
At the time of trial, the defendants objected to Mr. Carroccio's testimony as irrelevant because his estimate had been prepared only a few days prior to trial, which was several years after the filing of suit. The defendants' position, which the State now re-urges, was that requiring them to pay for any deterioration or further settlement that might have occurred between the filing of suit and the time of trial would ignore the plaintiffs' obligation to mitigate damages. In addition, the defendants objected to Mr. Carroccio as a surprise witness, noting that his testimony was substituted at the last minute for that of Mr. Paul Charbonnet, Jr., who had inspected the property in 1978 and was listed by the plaintiffs in their pretrial order as their expert on damages. The State also reurges this objection on appeal. Finally, the State objects to the inclusion in Mr. Carroccio's estimate of $8,348.00 for leveling work because this figure was not determined by Mr. Carroccio himself, but was provided to him by a leveling contractor whom the plaintiffs had consulted previously.
We find the State's objections to be without merit. With regard to mitigation, the law is clear that an injured party has a duty to mitigate only if it is reasonable for him to do so. Armistead v. Shreveport & R.R. Val. Ry. Co., 108 La. 171, 32 So. 456 (1901); Ackel v. Coca Cola Bottling Co., 385 So.2d 30, 33 (La.App. 4th Cir.1980). Since the plaintiff testified that at no time did they have sufficient funds to repair the house, we find that it was not reasonable for them to mitigate damages, and therefore they had no duty to do so.
With respect to the substitution of Mr. Carroccio's testimony for that of Mr. Charbonnet, the State claims that is entitled to the usual presumption which attaches upon a plaintiff's failure to call a material witnessi.e., that the testimony *693 of that witness would be unfavorable to plaintiff. Nunez v. Nunez, 436 So.2d 682 (La.App. 4th Cir.1983). However, the law is clear that this presumption does not apply when the witness is equally available to both parties yet the defendant fails to call him. Beychok v. Norton, 449 So.2d 32 (La.App. 1st Cir.1984); Young v. State Farm Fire & Cas. Ins. Co., 426 So.2d 636 (La.App. 1st Cir.1982), writ den. 433 So.2d 148 and 433 So.2d 171 (La.1983); Fortenberry v. Fortenberry, 432 So.2d 1125 (La. App. 3rd Cir.1983). In this case, the record does not reflect any reason why the State could not have subpoenaed Mr. Charbonnet to rebut the testimony of Mr. Carroccio. Not only did the State fail to do so, but it failed to present any witness at all to testify as to the extent of damages. Under the circumstances, we find that the trial judge was correct in accepting Mr. Carroccio's estimate.
The final objection of the State concerns the inclusion in the estimate of an item that Mr. Carroccio received from a leveling subcontractor. The State claims that this portion of the estimate should be excluded because it is impermissible for an expert to rely on another expert in forming his opinion; rather, the expert must base his opinion wholly upon facts within his knowledge. To counter this argument, the plaintiffs assert that it is normal and necessary for a building contractor to rely on various subcontractors for portions of this work. In addition, the plaintiffs cite National Surety Corp. v. Travelers Ins. Co., 149 So.2d 438, 441 (La.App. 3rd Cir.1963), in which the Third Circuit held that proof of damages to a tractor was sufficient where the only evidence was the testimony of an insurance adjuster, even though the adjuster had prepared his estimate with the assistance of a master mechanic who died before the trial began.
After reviewing the law, we find no definitive answer to the question of whether an expert contractor can rely on the bid of a subcontractor in formulating his own estimate. While it is generally true that an expert witness is not permitted to base his opinion on factual information furnished to him by persons outside of court, the Louisiana courts have, at least in criminal cases, occasionally allowed this type of testimony. G.W. Pugh, Louisiana Evidence Law (1978 Supplement) 196-197. In State v. Austin, 282 So.2d 711, 712 (La.1973), wherein the defendant was charged with negligent homicide, the Supreme Court overruled a hearsay objection to the testimony of an expert in accident reconstruction by stating, "It is no bar to an expert's testimony that he obtained information from other persons." Moreover, the Supreme Court has held that it is permissible for doctors testifying as experts to rely upon reports of other doctors and nurses in forming their opinions. State v. Fallon, 290 So.2d 273, 291 (La.1974); State v. Berry, 324 So.2d 822, 828 (La.1975), cert. den. 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976).
Although we can find no civil cases in Louisiana that deal with this issue, it is interesting to note that the Federal Rules of Evidence specifically allow the type of testimony involved in this case. Rule 703 states:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Thus, an examination of all the relevant law on this point convinces us that the portion of Mr. Carroccio's estimate taken from the leveling subcontractor is allowable. Accordingly, we find the State's objections to be meritless and hold that the quantum awarded by the trial court was not excessive.
Therefore, for the reasons assigned, we affirm the judgment of the trial court, with all costs to be borne by appellant.
AFFIRMED.