JOHN S. COVINGTON, Judge.
This litigation is between the owners of contiguous properties. Both litigants purchased from a common ancestor in title in 1971. A residence was located on plaintiff's property when she and her husband acquired it. Defendant’s property, in 1971, was a slough or marshy area, and was several inches lower than plaintiff’s five acres. Beginning in about 1974 or 1975, defendant excavated an area adjacent to the Intracoastal Canal for use as a slip to accommodate its dry dock facilities. Beginning with the initial excavation, defendant spread the soil from the slip area over its land; as additional excavations were done, either to enlarge the slip or dredge sediment from it, the dirt was spread on defendant’s land; over a period of time, before plaintiff sued for damages and injunc-tive relief, defendant built up its land an average of 18 inches, thus making it higher than plaintiff’s adjoining land.
Plaintiff’s suit alleged, inter alia, that her land was the dominant estate and defendant’s land was the servient estate for purposes of the natural servitude of drainage and defendant’s building up its land *766 with the spoil from the slip and its filling the ditches that had existed for many years before either plaintiff or defendant had acquired their respective lands prevented the natural flow of water from the dominant estate across the servient estate in violation of rights secured by La.C.C. art. 655 et seq. In addition to seeking damages because of sewage backing up, rainwater remaining on her land, and problems arising from those facts, plaintiff sought both prohibitory and mandatory injunctions to prevent defendant from spreading additional dirt and to compel it to restore the natural drainage rights to which she claims she is entitled.
Following a two day bench trial the district court took the matter under advisement and rendered judgment approximately ten and one-half months later. The court awarded plaintiff two-fifths of her actual damages and commanded defendant “to submit to this court ... a plan satisfactory to this court that will control the drainage problem caused by the runoff from defendant’s property” and to complete “the project no later than July 9, 1984.” The court’s written reasons for judgment, but not the judgment, specified that “the plan should not include the use of any portion of the Savoie property.” Plaintiff appealed the judgment only as to quantum. Defendant neither appealed nor answered plaintiff’s appeal.
ASSIGNMENTS OF ERROR
Plaintiff assigns nine separate specifications of error but we address only those necessary to a determination of the merits of her appeal, as follows:
1.The trial court erred in its holding that plaintiff was required to mitigate her damages by either constructing drainage ditches at her expense or by granting the necessary right of way to the Terrebonne Parish Police Jury so the police jury could construct them at public expense.
2. The trial court abused its “much discretion” granted by La.C.C. art. 1934(3), and the jurisprudence interpretive thereof, in fixing its general damages award as low as it did in view of the severe sewage problem and plaintiff’s “extensive mental anguish.”
3. The trial court erred in permitting a lone police juror to testify that the police jury would have constructed drainage ditches on the contiguous properties to alleviate the drainage and sewage problems.
We discuss the third assignment first because it is, for reasons hereinafter stated, less troublesome.
Louis Klingman, Jr., police juror for the district in which both properties are situated, testified, over plaintiff’s objection, that after assuming office in 1980, he investigated a complaint by plaintiff that she had a drainage problem and “they definitely had a problem.” On a subsequent visit, requested by a half-owner of defendant, he determined the nature of the problem and offered to have the police jury’s engineer work up a plan for drainage ditches. He also offered to dig the ditches at public expense provided both plaintiff and defendant would “give half of the right of way along that fence” which divides the two properties.[1] However, Mr. Klingman said plaintiff declined, stating that if any ditch is going to be dug “it’s going to be dug all on Rayco’s property.”
Mr. Klingman made no representation that he was speaking on behalf of the police jury as a whole. No official minutes of the police jury were introduced into evidence to establish that the police jury intended to do the work Mr. Klingman offered to have done.
We observed in Wes-T-Erre Development v. Parish of Terrebonne, 416 So.2d 209 (La.App. 1st Cir.1982), Writ Denied, 421 So.2d 251 (La.1982), in part, as follows:
Mr. Duet and Mr. Glover were the police jurors who had certain meetings *767 with Mr. Lapeyre of Wes-T-Erre and whose testimony was objected to on the trial of the matter. Clearly, the representations that an individual juror might have made to Wes-T-Erre were without apparent authority. A police jury can only act as a body and not individually. Their testimony was hearsay and was properly excluded. Neither Glover nor Duet are parties litigant in this proceeding and were not and could not have been acting in an official capacity. ...
... If appellant had obtained a resolution of the police jury, setting forth that in return for the closing of one drive another drive in the approximate location of the one in question would be allowed, a different situation would be presented. However, such is not the case.
416 So.2d at 217.
The trial court therefore erred in accepting Mr. Klingman’s testimony as legal proof that the police jury would correct the drainage problem on the two parcels of private property. Plaintiff asserts, correctly, that the police jury could not have legally done what Mr. Klingman offered unless the needed right of way was donated to the public’s representative, the police jury, and dedicated to the use of the public. Article 7, § 14(A) of the Louisiana Constitution of 1974 prohibits the “state or ... any political subdivision” from lending, pledging, or donating “to or for any person, association, or corporation, public or private” its “funds, credit, property, or things of value.” Clearly, the value of the engineering services and the cost of excavating the necessary ditches on and across privately owned land would constitute “things of value” and their donation to private land owners is plainly prohibited.[2]
Plaintiff’s third assignment of error, therefore, has merit.
MITIGATION OF DAMAGES
In written reasons for judgment, the trial court stated, in part, that:
“The evidence ... showed that the Sa-voies could have lessened the effect upon their land of the drainage problem created by Rayco by digging ditches themselves or consenting to the offer of free ditching by the Terrebonne Parish Police Jury.
Defendant called as a witness Mr. Louis P. Klingman, Jr., police juror ... This Court finds Mr. Klingman’s testimony quite relevant to the issue of what could have been done to alleviate the drainage problem, which is the crux of this lawsuit. Shortly after 1980 ... the juror visited the Rayco property to view the problem with the Savoie property. He offered on behalf of the police jury ... to have the police jury dig a ditch along the boundary line between the two properties. ... The Savoies refused this offer, stating that it would have to be entirely on Rayco land.
The Court finds that such a refusal by the Savoies was unreasonable under the circumstances. They could have given the right of way and then sought redress from Rayco for that minor loss. Instead, they chose to allow the drainage problem to become worse, causing at least part of the damage to the barn and the sewerage system of which they now eomplain.
Clearly, the Savoies have failed to mitigate their damages, which was their duty under the law. Consequently, they are not entitled to an award for damages which occurred since 1980. (Emphasis supplied.)
The court then found Mrs. Savoie’s actual damages to total $11,000.00 but awarded her only two-fifths of that sum, representing damages in 1979 and 1980, because the court found “that plaintiff should have mitigated her damages some time in 1980.”
Jerry Kilby, a civil engineer with specialized knowledge and experience in the fields of sewage and drainage in connection with highway work, testified that (1) Rayco’s land “has been obviously raised”; (2) it is higher than the Savoie property and blocks *768 and impedes drainage from the Savoie property; (3) in addition to the blockage “the way the dirt is mounded” on Rayco’s land “adds additional runoff towards the Savoie property”; (4) before the spoil was used to build up Rayco’s property “it was obvious that the drainage went from the Savoie property across [Rayco’s land] directed probably to the intracoastal waterway”; (5) Savoie’s trapped water and Ray-co’s “additional runoff” raised the water table “above the perforated pipe” of the Savoie cesspool drainfield, preventing the water effluent from the sewer system from percolating into the ground and causing the sewage to back up. Mr. Kilby opined that the “most expedient solution [to the drainage and sewage back up problem] is to continue the ditch from Deroche Street, somewhere near the property line between Savoie and Rayco, to the rear of the property; and then from that corner, somewhere near again the property line, to the intracoastal [canal].” He calculated the cost of that “most expedient solution” to be about $3,000.00.
In Barley v. State, Through State Department of Highways, 463 So.2d 689 (La.App. 4th Cir.1985), the court stated the well-settled jurisprudential rule of mitigation of damages,[3] as follows:
... With regard to mitigation, the law is clear that an injured party has a duty to mitigate only if it is reasonable for him to do so. ... Since the plaintiff testified that at no time did they have sufficient funds to repair the house, we find that it was not reasonable for them to mitigate damages, and therefore they had no duty to do so.
463 So.2d at 692.
The Second Circuit Court of Appeal, in Aultman v. Rinicker, 416 So.2d 641 (La.App. 2d Cir.1982), cited by plaintiff, reasoned, in pertinent part, as follows:
... While an injured person must use reasonable diligence and ordinary care under the circumstances to minimize his damages, this principle will not be applied to restrict an injured person’s recovery when the injured person is required to make substantial expenditures of his own funds and to incur substantial risk in order to avoid the consequences of the tort. ...
416 So.2d at 645.
The court in Aultman cited Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968) in support of the statement quoted above.
Plaintiff and her husband were judicially separated in 1979 and she acquired complete ownership of the land and improvements in 1979 by way of a community property settlement.
Under the circumstances, we hold that it was not reasonable to require plaintiff to mitigate her damages by either spending $3,000.00 of her own funds or by “consenting to the offer of free ditching by the Terrebonne Parish Police Jury,” if, in fact, such an “offer” was ever made in compliance with law. We have hereinabove held that Mr. Klingman’s “offer” was not the official action of the police jury. The main thrust of the district court’s finding of unreasonableness on the part of plaintiff in failing to mitigate her damages was the refusal to accept “free ditching” rather than failing to spend $3,000.00 to construct ditches along the property line of her land and Rayco’s land and across Rayco land to the Intracostal Canal, a necessary termination point for the ditch in order to achieve the “most expedient solution” Mr. Kilby testified about. We find, under the totality of circumstances, that it would have been unreasonable to require plaintiff to “make substantial expenditures” of her own funds and commit a trespass upon Rayco’s lands in order to relieve drainage and sewage back up problems created by Rayco’s actions made in apparent disregard for its abutting neighbors.
When the trapped water and backed up sewage rendered plaintiff’s back yard, one-half acre behind the residence, and a bam *769 on the one-half acre, unusable for their intended purposes and the stench from the raw sewage in her yard and in the ditches alongside the street in front of her house made living there virtually unbearable, she instituted suit for injunctive relief to correct the problem and for damages to compensate her for the consequences of the drainage and sewage problems. She was required to do nothing more. To further compound the problem, plaintiff had to wait almost two years before the mandatory injunction, requiring the problem to be corrected, was issued by the court below. Therefore, from 1979 until June 7, 1984, when judgment was rendered, plaintiff did not know whether the problem would be resolved.
Plaintiff was not required to make substantial expenditures to correct a problem not of her own creation or to allow the police jury to solve the drainage problem at public expense. The damages awarded plaintiff should not have been reduced to two-fifths of the “actual damages” found by the court to have been sustained by her. We find plaintiff’s first assignment of error to be meritorious.
QUANTUM
In Reck v. Stevens, 373 So.2d 498 (La.1979), the Supreme Court, per Tate, J., reiterated the well-established codal rule that in the assessment of general damages, “much discretion must be left to the [trial] judge or jury,” citing Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) as “the fountainhead decision of modern jurisprudence interpreting and applying this [article 1934(3) ] code provision.” 373 So.2d at 499. Justice Tate observed in Reck that the Supreme Court had “elaborated on the methodology of appellate review of awards for general damages in Coco v. Winston Industries, Inc.,” and quoted from Coco, 341 So.2d 332 at 335, as follows:
We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.
373 So.2d at 500. (Emphasis by the Court.)
He further reasoned that:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive [or inadequate].
[[Image here]]
Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s “much discretion,” ... in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, ..., or insufficient, ... Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
.[P]rior awards may serve as an aid in this determination [of excessiveness or insufficiency] only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, *770 but the mass of them) for (truly) “similar” injuries, see Coco at 341 So.2d 334.
However, absent an initial determination that the trial court’s very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier’s award. Wilson v. Magee, 367 So.2d 314 (La.1979).
373 So.2d at 501. (Emphasis and brackets supplied.)
Mental anguish and inconvenience in sewer back-up cases are compensable. Carr v. City of Baton Rouge, 314 So.2d 527 (La.App. 1st Cir.1975), writ denied, 318 So.2d 53 (La.1975).
The standing water created a sewage back-up problem resulting in the loss of use of the backyard because it is “full of tall grass, snakes, rats and mosquitoes.” Clayton Dupuis, Chief Sanitarian for the Terrebonne Parish Health Unit, testified as an expert in the fields of sewage and public health. He stated that he examined plaintiff’s property in May and July, 1982. He observed that about 60 to 75 feet behind the residence was a low area which had standing water and sewage and that raw sewage was in the ditch along the street which runs in front of the house. He opined that the water and sewage accumulations are breeding grounds for many health problems including hookworms and encephalitis carrying mosquitoes. Plaintiff testified that she worried constantly for her own health and that of her children who lived in the home with her. She stated she was inconvenienced, embarrassed and humiliated by the constant stench emanating from the sewage in her back yard for more than five years before the trial.
While the record is not entirely clear as to how many people lived in plaintiff’s residence from 1979 until the date of trial, it does reflect that plaintiff and one daughter were residing there at the time of trial.
The trial court awarded $3,750.00 as damages for “sewage problem and mental anguish.” We conclude that an analysis of the facts revealed by the record discloses an abuse of the trial court’s discretion granted by La.C.C. art. 1934(3).
Our review of prior awards in sewerage backup cases leads us to conclude that plaintiff should have been awarded at least $7,500.00 in general damages for the mental anguish to compensate for the inconvenience, embarrassment and annoyance of having to put up with an uninhabitable back yard rendered so because it was an open sewer for about five years. Some of the many cases we have reviewed as to damages awards in sewage backups include Watters v. City of Bastrop, 445 So.2d 73 (La.App.2d Cir.1984); Romero v. Town of Welsh, 370 So.2d 1286 (La.App. 3d Cir.1979); Falgout v. St. Charles Sewerage District #3, 351 So.2d 206 (La.App 4th Cir.1977), writ denied, 353 So.2d 1047 (La.1978); and LaCroix v. Travelers Indemnity Co., 333 So.2d 724 (La.App. 2d Cir.1976). Based on both an analysis of the cited cases and the facts we have articulated herein, which are reflected in the record of this case, we conclude that the lowest award which the court could have made, without abusing its discretion, was $7,500.00 for mental anguish occasioned by the sewage backup and blocked drainage. In all other respects, the damages awarded were within the acceptable range and do not constitute an abuse of the trial court’s discretion.
This disposes of the second assignment of error which we deem meritorious.
Accordingly, the judgment of the district court is modified to award Mrs. Martha M. Blanchard Savoie the sum of $7,500.00 for mental anguish; the judgment is further modified to award to Mrs. Savoie the full $6,250.00 found by the trial court to be the diminution in value of the property and loss of use of one-half acre of land and the full $1,000.00 found by the trial court to represent the loss of the barn and fence on the one-half acre. All awards are to bear legal interest from date of judicial demand until paid. Defendant, Rayco Shipbuilders and Repair, Inc., is cast for all costs, including costs of this appeal.
*771 AMENDED AND, AS AMENDED AFFIRMED.
LANIER, J., concurs in the result.

. We assume Mr. Klingman was referring to a right of way donated to the police jury, i.e., a dedicated public servitude.

. See Footnote # 1.

. La.C.C. art. 2002, enacted by Section 1 of Act 331 of 1984, effective July 2, 1984, codifies the duty to "make reasonable efforts" to mitigate damages.