Dear Mayor Lamonte:
The Village of Tickfaw is responsible for the repair and continued maintenance of the Village's sewerage line, and for the payment of the costs thereof. You have requested an opinion of this Office on the responsibility and liability of the Village of Tickfaw with regard to the repair and maintenance of malfunctioning sewerage lines. More specifically, you have asked whether the Village is liable for replacing damaged sewerage pipes, and, if so, whether the Village can legally spend funds to remedy the problem? As will be discussed in more detail herein, it is the opinion of this Office that the Village is responsible for the repair and continued maintenance of the Village's sewerage line, and for payment of same.
Background
Before delving into the specific legal issues, it is important to first discuss the pertinent factual background accompanying your request. It is our understanding that the sewerage line in question was installed in 1999 by the former administration and the then current property owner. Further, the Village has received payments from the residents since 1999 for water and sewer services. As such, the Village has historically maintained the sewerage line and all problems that have arisen with regard to same. Recently, the sewerage line has become severely impaired such that the entire line needs to be replaced with new pipe.
In addition to the liability issues mentioned above, it is also the understanding of this Office that you have a secondary question relating to servitude and/or rights-of-way agreements between the Village and the property owners. You have indicated that although the original contractor obtained a right-of-way for the construction of the sewerage line, the proper agreements and plats or surveys were never properly filed in the conveyance records of the parish.
Discussion
Generally, the powers and duties of sewerage districts are governed by La.R.S. 33:3881 et seq. More specifically to the Village of Tickfaw, subparts B and D, governing *Page 2 
municipalities, generally, and municipalities with a population of less than 1,000 residents, respectively, are applicable to its sewerage district. See, La.R.S. 33:3911-3915 (municipalities generally) and 3951-3960 (governing municipalities of less than 1,000).[1] In addition to other powers and duties listed in the aforementioned statutes, sewerage districts are authorized to "maintain and operate such systems" and "use therefore the maintenance tax hereinafter provided . . . to protect the public health." La.R.S.33:3912.
La.R.S. 33:3951, relating specifically to municipalities with less than 1,000, states:
 [i]n addition to other powers relating to the creation of sewerage districts or the construction of sewers and sewerage disposal plants, the governing authority of any municipality having a population of one thousand or less may create sewerage districts to construct and maintain sewers and sewerage disposal works within their territorial limits in accordance with the provisions of this Sub-part. [Emphasis added]
More importantly, section 3960 specifically states that once full ownership of the sewerage system vests in the municipality, that municipality "shall thereafter maintain and operate it at its ownexpense and as part of its sewerage system and a public utility of the municipality."[2] [Emphasis added] Although the provisions governing municipalities of less than 1,000 contain specific language for,inter alia, the proper method of constructing sewerage systems and assessing taxes for payment of same, these districts also maintain the authority to tax property for the purpose of maintaining the sewerage system. La.R.S. 33:3980.1 not only specifically provides for such taxing authority, but also states that the proceeds of the tax "may be used by the political subdivision for any aspect of providing sewage disposal services, including but not limited to . . . operation, repair,or maintenance."[3] Thus, not only is the Village responsible for maintaining and repairing malfunctioning sewerage systems, but it is also authorized by this section to spend its own funds to accomplish this task.
This conclusion, that the Village is responsible for repairing the sewer line, is supported by the jurisprudence of this State. In Carr v.City of Baton Rouge, 314 So.2d 527 (La.App. 1st Cir. 1975), a homeowner brought a successful action for recovery against the City of Baton Rouge for damages sustained as a result of the backup of sewer effluent into his home. The First Circuit held the City responsible, under La.C.C. Art. 667, because a section of the City's main sewer line was crushed, which is what lead to the damage. Notably, the court acknowledged that *Page 3 
 [w]hile the record does not contain any evidence as to who actually constructed the main sewer line, we must conclude that it became the work of the defendants [city] when, if not built by them, the same was accepted and maintained by the defendants.
314 So.2d at 529. Thus, similar to the City of Baton Rouge in Carr, regardless of who built the sewerage system referred to in your opinion request, because you indicate that the Village has historically maintained the system, it follows that the Village is liable for the sewer lines. See also, La. Atty. Gen. Op. 87-325 (the public body is responsible for the sewer lines that have become part of the sewer system regardless of whether the line or connection was constructed by that public body).
Further, you have indicated that the right-of-way agreement between the original landowner(s) and the Village, while provided, was never filed in the registry of the court. In fact, there is no record of an official signed copy of such agreement, though the right-of-way is indicated on the contractor's survey. This Office cannot make factual findings as to whether the Village has obtained a legally enforceable right-of-way agreement. However, we can provide you with general information regarding rights-of-way and the public records doctrine in Louisiana.
The recordation of rights-of-way for public facilities is governed by La.R.S. 9:2726. This statute states, in pertinent part:
 [e]ach person obtaining a servitude or right of way across private property where the servitude or right of way is obtained for the installation of a facility[4], or facilities, shall attach to the servitude or right of way agreement a plat, sketch or aerial photograph showing the approximate location of the servitude or right of way and the instrument and plat, sketch or aerial photograph shall be recorded in the conveyance records of the parish in which the private property is situated.[5]
However, a failure to record the instrument and plat, sketch or aerial photograph does not render the right-of-way agreement ineffective as between the grantor and grantee, their heirs, successors, or assigns. La.R.S. 9:2726(E). Thus, even if the right-of-way in this matter was not properly recorded in the conveyance records of your parish, if such agreement exists, it is still effective as between the Village and the grantor.
This conclusion is supported by the public records doctrine in Louisiana. See, generally, La.C.C. Arts. 3338 — 3368. This doctrine declares that a failure to record, for example, a servitude, does not negate the existence of the servitude; however, the *Page 4 
servitude will be without effect as to third parties unless and until the instrument is recorded. La.C.C. Art 3338.
Conclusion
In summary, it is the opinion of this Office that the Village of Tickfaw is responsible for the repair and continued maintenance of the Village's sewerage line, and for the payment thereof. Also, notwithstanding that the original right-of-way was not properly recorded in the conveyance records of the parish, such does not negate the existence of the right-of-way as between the village and the grantor. However, this Office cannot take a position on whether a valid right-of-way agreement exists between the Village and the property owners. Such a judgment would constitute a factual determination that is a question properly presented to a court of competent jurisdiction.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our Office.
 Yours truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ Megan K. Terrell Assistant Attorney General
 JDC/MKT/tp
[1] The Village of Tickfaw has a population of less than 1,000.http://www.Ima.org/muniinfo.asp. Last visited on 8/25/2008.
[2] Note that this Office cannot make factual findings, and in any event, does not have sufficient information to determine whether the ownership of the sewerage system of the Village of Tickfaw has vested in the municipality. The information contained herein is offered to discuss the laws relating to sewerage districts, generally.
[3] La.R.S. 33:3980.1(E) [emphasis added].
[4] "Facilities" are defined to include "waterways and drainage canals and underground, surface and overhead pipelines, sewerage lines, utility lines and electric power lines." La.R.S. 9:2726(C).
[5] La.R.S. 9:2726. It is also worth noting that there is an exception to this requirement. Specifically, subsection D states that this section shall not apply to a public utility servitude established in a subdivision by the subdivider. *Page 1 
OPINION NUMBER 87-325
Sanitation 93-A
A sewerage district that maintains sewerage lines is responsible for those lines and the repair thereof regardless of whether it constructed the line or same was constructed by the landowner. Carr v. City of BatonRouge, 314 So.2d 527 (La. 1st Cir. 1975).
Mr. Guy L. Deano Attorney at Law Post Office Box 1210 Mandeville, Louisiana 70448
Dear Mr. Deano:
As attorney for the St. Tammany Sewerage District No. 1 you have asked for an opinion as to whom is responsible for repairs to be made on several sewerage lines within the District's jurisdiction. You have advised that there is approximately twenty or twenty-one homes whose connections were not made to the regular connection joints but were broken or punched through and cemented over leaving an obstruction of some part of the connecting pipe inside the collection lines. These obstructions have caused a slowing down or stoppage of the normal flow of sewerage in the gravity lines and promotes backing up and leaking problems. Most if not all of the irregular connections were placed by previous landowners. Under these circumstances you have asked who is responsible for the cost of the repairs, the District or the individual property owner.
We are of the opinion that the responsibility for the costs of the repairs falls upon the shoulders of the District by analysis of Carr v.City of Baton Rouge, 314 So.2d 527 (La.App. 1st Cir. 1975) which, while not directly on point, sufficiently states the responsibilities of a public sewer district.
In the above the defendant responded to a call by plaintiff that his commodes were overflowing. Upon examination it was determined that a section of the main sewer line was crushed. Plaintiff sued claiming the damage was done by defendant in trying to repair the line.
The First Circuit sustained the lower court in disregarding negligence and ruling that Louisiana Civil Code Article 667 applied. In so holding the court clearly held that the operation and maintenance of the line was the *Page 2 
responsibility of the defendant and hence they were "proprietors" of the sewer line within the intent of Louisiana Civil Code Article 667 which states:
 Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
As "proprietors" the court held the defendant liable for the damages sustained regardless of any negligence which issue was not determined.
Interestingly, there apparently was an allegation that the main sewer line was constructed by the property owner because the court stated at page 529:
 While the record does not contain any evidence as to who actually constructed the main sewer line, we must conclude that it became a work of the defendant when, if not built by them, the same was accepted and maintained by the defendant. A plat of the sanitary sewer system for the subdivision in which plaintiffs reside is contained in the record and clearly denotes the servitude and prescribes the requirements which must be adhered to when individual property owners connect their own lines to the main line. (Emphasis added.)
We believe that this case establishes the principle that the public body is responsible for the sewer lines that have become part of the sewer system regardless of whether the line or connection was constructed by that public body. *Page 2 
This principle, in our opinion, would apply equally to the costs of repairs as it does to tort liability.
If we may be of further service in this matter, please do not hesitate calling upon us.
 Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: __________________________ DAVID C. KIMMEL Assistant Attorney General
 DCK/cl