SHORTESS, Judge.
This suit for damages was brought by Eugene Hampton (plaintiff), an inmate at Louisiana State Penitentiary at Angola, against the State of Louisiana and the Department of Corrections (defendant). The facts showed that plaintiff was asleep alone in his cell around 12:15 a.m. when Bertrand Brown (a fellow inmate on his cellblock) threw acid or some other foreign substance into plaintiff’s cell and on his face, neck and upper torso. The matter has been before us on two previous occasions.
Originally, after a trial on the merits, plaintiff’s suit was dismissed and he appealed. Hampton v. State, Through Dept. of Corrections, 361 So.2d 257 (La.App. 1st Cir.1978). We reversed and remanded because an issue arose during the trial as to whether or not a crucial stipulation may have been made by defendant as a result of an error of fact. The stipulation is quoted as follows:
“The plumber’s acid in question in this case was distributed to inmates by Angola Officials for the purpose of cleaning commodes. Only a quarter of a cup of cleaner was distributed at any one time and inspections were made to determine if the commodes had been cleaned.”
During the trial, testimony which contradicted this stipulation was introduced by the State over plaintiff’s objection. We held that since it appeared from the record that the stipulation may have been made as a result of an error of fact and since plaintiff, relying on the stipulation, made no attempt to prove the manner in which the acid was distributed, that justice would best be served by remanding the case to the trial court so evidence could be taken by both parties.
*434 On remand, the State presented witnesses who testified as to the procedures generally-used in distributing the cleaning fluid.[1]
Plaintiff did not attack the credibility of the State’s witnesses nor offer any rebuttal testimony. The trial court found that the stipulation had been made through an error of fact and allowed defendant to withdraw therefrom after the evidentiary hearing. The trial court then dismissed plaintiff’s suit, whereupon he appealed again. See Hampton v. State, 376 So.2d 980 (La.App. 1st Cir.1979), writ denied 378 So.2d 432 (La.1979). We affirmed that portion of the trial court’s judgment which found that the stipulation was made through error of fact, and allowed defendant to withdraw therefrom, but again remanded the case, because we found that the trial court erred in accepting this testimony to prove defendant’s lack of negligence. The State tendered this testimony solely to establish its contention that the stipulation was entered into through factual error. By also accepting the testimony to prove the State’s lack of negligence, plaintiff was unable to present his case on the merits of defendant’s negligence, as he could no longer rely upon the stipulation. On remanding, we said:
“Under the circumstances, Appellant could not have been expected to anticipate the court’s ruling on the stipulation. We deem it elementary that Appellant must be afforded a fair opportunity to present whatever evidence he can, especially since the testimony produced by the State on the question of error as to the stipulation, indicates that certain employees of the State, who were not called by the State when the matter was on remand, have information concerning the manner in which the acid was distributed.” Hampton v. State, 376 So.2d at 983
After the second remand, on March 20, 1980, plaintiff exercised his procedural prerogatives as provided in La.C.C.P. art. 1421, et seq., and propounded five interrogatories to defendant.[2] These interrogatories were *435 quite broad in nature, and apparently were designed to help plaintiff discover facts which would aid him in proving his case. Thereafter, we note the following chronology of events:
1. Motion to compel answers to interrogatories 4/23/80
2. Answer to interrogatories by defendant (In these answers, defendant attempts to use the business record option, as per La. C.C.P. art. 1460.) 5/29/80
3. Judgment (The court refused to grant the La.C.C.P. art. 1460 option and ordered defendant to answer the interrogatories within 30 days.) 9/11/80
4. Answer to plaintiffs interrogatories filed March 20,1980 (Defendant answered interrogatories 1, 2, and 5, but expressed inability to answer interrogatories 3 and 4 at that time.) 10/10/80
5. Supplementary answer to plaintiff’s interrogatories filed March 20,1980 (Defendant answered interrogatories 3 and 4.) 11/26/80
6. Motion for sanctions by plaintiff 10/24/80
7. Judgment (Court ordered defendant to answer interrogatories in full and in compliance with September 11,1980, order.) 2/19/81
8. Supplementary answer to plaintiff’s interrogatories (Defendant supplemented its answers to interrogatories 1, 3,4 and 5.) 4/16/81
9. Supplementary answer to plaintiff’s interrogatories (Defendant supplemented its answers to interrogatories 1 and 5.) 5/15/81
10. Supplementary answer to plaintiff’s interrogatories (Defendant supplemented its answers to interrogatories 1, 2,3 and 5.) 6/11/81
11. Motion for a protective order (No return day was ever fixed to the order, which was not signed by the trial court. Attached to this motion is an affidavit from Houston T. Penn, defendant’s counsel, which states: “He submitted by hand carrying to plaintiff’s counsel of record business office on this date the records as outlined in the defendant’s, State of Louisiana Department of Corrections, Supplemental answers to Interrogatories # 1, 2 and 3 propounded by plaintiff to defendant and plaintiff’s counsel, Mr. Gregory Eaton, refused to accept delivery of the records. Appearer further declares that pursuant to the above incident and actions of plaintiff’s counsel, the two boxes containing the above described records were returned to defendant’s counsel of record office located at 1885 Wooddale Boulevard, Baton Rouge, Louisiana.”) 6/11/81
12. Supplementary answer to plaintiff’s interrogatories (Defendant supplemented its answers to interrogatories 1 and 5.) 9/4/81
13. Judgment making rule absolute (The trial court ordered the original stipulation reinstated.) 12/8/81
After the trial court reimposed the stipulation which had previously been found to *436 have been erroneously entered into, a trial on the merits was held. The court accepted the stipulation[3] as a confession of the State’s liability, received evidence as to plaintiffs injury and granted judgment to plaintiff for $10,000.00. Defendant has appealed to this court.
While we are loathe to remand this case for the third time, we must do so. The record clearly shows that the trial court did not afford defendant a hearing on its motion for a protective order of June 11, 1981. The record also indicates that the State throughout these proceedings continually supplemented its answers as more information could be gathered and compiled. Finally, the record indicates that defendant’s counsel hand delivered to plaintiff’s counsel’s office a voluminous set of records comprising 5,988 pages, representing same to be the entire record in connection with the case, and further offered to make available at plaintiff’s convenience, Edward G. Mills, defendant’s officer in charge of all these records, for explanation, verification, or clarification. At this time, plaintiff had access to scores of names of security officers who might have relevant information as to cleaning measures on Cellblock A. He had a list of all inmates who were incarcerated on Cellblock A during the long period which he requested. He had at least partial lists of chemicals used on the cellblock, and construction and repair jobs on the cellblock. Notwithstanding all this information, the record reveals no additional or more specific discovery efforts by plaintiff. Defendant asserted that the tremendous amount of effort and expense expended by State employees in an effort to comply with the interrogatories placed an unreasonable and continuing burden upon it. Under these circumstances, we find that defendant should have been afforded a hearing on its motion for a protective order which, in view of the record, appears to us may have some merit. See La.C.C.P. art. 1426.
While we find a remand is necessary in order to afford the State a hearing on its motion for a protective order, we also find that, because this litigation has been so prolonged and protracted, that we must issue instructions so the case can finally be completed. We order that this matter be remanded, and the trial court is ordered to conduct an evidentiary hearing on the merits of defendant’s June 11, 1981, motion for protective order. If the trial court finds the order has merit, it may either proceed to a trial on the merits or permit plaintiff an opportunity to pursue additional discovery based on the information provided in these interrogatories. If the trial court finds that the motion for protective order has no merit, it may then reconsider the plaintiff’s motion for sanctions, impose such sanctions as the law permits, and then proceed to try the case on the merits. We also note that defendant has outstanding motions to compel interrogatories and sanctions which, according to the record, were never ruled upon by the trial court. Defendant is entitled to a hearing on its motions also. Assessment of costs shall await further proceedings.
REVERSED AND REMANDED, WITH INSTRUCTIONS.

. “Clarence Webb described the procedure in effect regarding the dispensation of cleaning fluid at the time in question. He stated it was a two-man operation in which one officer placed the acid in each commode, let it stand for a brief period, and then flushed the toilet. The accompanying officer guarded the cell door. He added that the acid was kept in a locked storeroom to which only higher ranking officers had a key. He emphasized that he was specifically instructed to make sure the acid was flushed down the commodes and that he knew of no instance in which an inmate handled the acid.” Hampton v. State, 376 So.2d 980, at 982.

. These interrogatories read as follows:
“1.
List all guards and other personnel who were involved with the operation, to any degree, of Cellblock A Lockdown from January 1, 1973 until March 31, 1975 stating for each:
a) Date of first employment
b) Date of last employment if terminated
c) Positions held and dates those positions were held
d) Description of activity with Cellblock A Lockdown and dates of said activity.
2.
List all inmates located in Cellblock A Lock-down from January 1, 1973 until March 31, 1975 stating for each:
a) Dates inmates were housed in Cellblock A Lockdown
b) Current location or address if discharged and date of discharge.
3.
List all acid or cleaning solutions by trade name and chemical makeup used in any form in Cellblock A Lockdown from January 1, 1973 until March 31, 1975 indicating for each:
a) Purpose or purposes for which it was used, indicating dates used for said purpose
b) Personnel authorized to use each and for what purpose each was authorized indicating dates used by said person for said purpose
c) Persons authorized to dispense each item indicating dates so authorized
d) Instructions accompanying each, indicating dates of same and manner in which instructions were transmitted, by whom and to whom. If instructions were in writing please attach.
4.
List all construction or maintenance work of any nature performed in the entire Cellblock A Lockdown area other than routine cleaning listed in interrogatory three (3) above, which may have involved any caustic substance from January 1, 1973 until March 31, 1975 stating for each:
a) The type of work done
b) Persons involved in activity
c) Whether officials of the State were involved in positions of authority regarding actual work performed and if so who, in what capacity and to what degree
d) Types of caustic substances involved and any instructions relating to each giving *435 source of said instructions and person transmitting same and to whom transmitted.
5.
List all persons answering interrogatories or supplying information or verifying information regarding interrogatory answers, categorically for each answer stating for each:
a) Date of employment
b) Persons supplying information to and receiving information from
c) Are answers their personal knowledge
d) Methods used to verify information indicating sources used and reasons for their use with explanation for their reliability and to what degree they are reliable and why.”

. We indicated in Hampton v. State, Through Dept. of Corrections, 361 So.2d 257 (La.App. 1st Cir.1978), that if the defendant distributed acid to inmates without supervising them closely in the use thereof, as per the recitals in the stipulation, then defendant was guilty of negligence.