JOHN S. COVINGTON, Judge.
This is the fourth time this case has been before us on appeal. We submit, but for a stipulation made by Department of Corrections’ original counsel, one appeal would have sufficed. Earlier decisions are reported at 361 So.2d 257 (La.App. 1st Cir.1978); 376 So.2d 980 (La.App. 1st Cir.1979), writ denied, 378 So.2d 432 (1979); and 434 So.2d 433 (La.App. 1st Cir.1983). In CA 85 0690, defendant State of Louisiana, through the Department of Corrections, hereafter DOC, appealed the trial court judgment reviving the much discussed stipulation. See previous decisions. Plaintiff-appellee’s motion to dismiss the appeal of CA 85 0690 on the basis of prematurity was denied. 476 So.2d 815 (La.App. 1st Cir.1985).
Both plaintiff and defendant appealed the judgment fixing the amount of general and special damages in CA 85 0835. On the court’s own motion, CA 85 0690 and CA 85 0835 have been consolidated for purposes of argument and decision because both appeals arose out of the same litigation with the same facts common to each. Plaintiff’s mother has been substituted as plaintiff-appellee in CA 85 0690 and as plaintiff, first appellant in CA 85 0835.[1]
FACTS
On March 13, 1975, Eugene Hampton, an inmate at Louisiana State Penitentiary, Angola, Louisiana, a facility operated by DOC, was moved to Cell Block A Lockdown and placed in a cell with Joe Ferrell. Shortly after midnight inmate Bertrand Brown, another occupant of Cell Block A, threw some acid on Hampton, the lone occupant of the cell at the time because Ferrell had been admitted to the prison hospital soon after Hampton was transferred to the cell. Brown expressed surprise that he had thrown acid on Hampton and apologized for doing so when he realized he had not thrown the acid on the person intended. No animosity or ill will existed between Hampton and Brown, at least before the acid throwing incident. The acid, mixed with syrup, produced disfiguring burns on Hampton’s head, face, neck and upper torso. Some reconstructive surgery was done during the approximate four months be *454 tween Hampton’s release from Angola in February, 1979 and his subsequent re-entry to Angola in June, 1979 for a felony committed after his release from prison. No reconstructive surgery was done between the date of his injuries and his release in February, 1979 or during the time of his subsequent prison term of June, 1979 to June, 1984 because DOC had a policy not allowing reconstructive surgery on inmates.
PREVIOUS APPELLATE DECISIONS
For the sake of completeness and understandability, we will briefly review the three previous decisions of this court in this litigation which has doubtlessly been protracted because of a stipulation made by DOC’s original counsel, via amendment to the pre-trial order, the effect of which stipulation was to admit liability on the part of DOC.
HAMPTON I
DOC’s controversial and much litigated stipulation is as follows: “The plumber’s acid in question in this case was distributed to inmates by Angola Officials for the purpose of cleaning commodes. Only a quarter of a cup of cleaner was distributed at any one time and inspections were made to determine if the commodes had been cleaned.”
At the opening of the first trial, DOC stated its desire to withdraw the stipulation on the ground that it had been made as the result of an error in fact and, over objection of Hampton, produced testimony which contradicted the stipulation by showing that no acid had been distributed to inmates in Cell Block A Lockdown. Relying on the stipulation as the bedrock of his claim of DOC’s liability, Hampton argued that he was not prepared to prove the facts set forth in the stipulation because those facts had been admitted by DOC. From the trial court’s judgment in favor of DOC which was held free of negligence, plaintiff appealed.
The trial court judgment was reversed and the matter remanded for an evidentia-ry hearing so “the trial judge can then determine if the stipulation was made by the State through an error in fact, and, if so, can permit the State to withdraw therefrom, and make a finding as to whether the State was negligent in its handling of acid.” 361 So.2d 257, 259. Additionally, we reasoned, in part, as follows: “ ... [W]e are of the opinion that if the State, in fact, distributed acid to the inmates without supervising them closely in the use thereof, that it was guilty of negligence. The stipulation ..., coupled with the fact that this incident occurred, necessarily lead to that conclusion.” 361 So.2d 257, 259.
HAMPTON II
On remand, the trial court heard the testimony of three officials and employees of DOC as well as that of DOC’s original counsel and held the stipulation was made in error of fact and allowed DOC to withdraw it and used the same unrebutted testimony as being dispositive of DOC’s alleged negligence, finding none, and again dismissed plaintiff’s suit.
Plaintiff again appealed. In affirming the trial court’s holding that the stipulation was made in error of fact, we reasoned, in part, as follows: “The trial court obviously accepted this testimony at its face value and concluded the stipulation was entered into in error. Our independent review of the record leads to the same conclusion.” 376 So.2d 980, 982-983.
Finding merit in plaintiff’s argument that it was error to use the same testimony alluded to in the above excerpt to be dispos-itive of the negligence issue, we reasoned, as follows:
The testimony offered by the State was not offered to prove its lack of negligence but solely to establish its contention that the stipulation was entered into in factual error. After concluding that the stipulation was indeed entered into through error, the trial court should have given [plaintiff] Appellant a continuance to prepare the presentation of his case on the merits of Defendants’ alleged negligence, inasmuch as Appellant could no longer rely upon the stipulation. Under *455 the circumstances, Appellant could not have expected to anticipate the court’s ruling on the stipulation. We deem it elementary that Appellant must be afforded a fair opportunity to present whatever evidence he can, especially since the testimony produced by the State on the question of error as to the stipulation, indicates that certain employees of the State, who were not called by the State when the matter was on remand, have information concerning the manner in which the acid was distributed.
376 So.2d 980, 983. (Brackets supplied.)
We reversed the judgment dismissing plaintiffs suit and remanded to the trial court “with instructions to proceed to the trial of this case on the merits.” 376 So.2d at 983.
HAMPTON III
After the remand ordered in Hampton II, “plaintiff exercised his procedural prerogatives as provided in La.C.C.P. art. 1421, et seq., and [on March 20, 1980] propounded five interrogatories to defendant.” 434 So.2d 433 at 434. “These interrogatories were quite broad in nature, and apparently were designed to help plaintiff discover facts which would aid him in proving his case.” 434 So.2d at 434-435. The interrogatories are set out verbatim at pages 434 and 435 of 434 So.2d and are too lengthy to repeat here.
Thirty-three days after propounding his interrogatories plaintiff filed a motion to compel answers to interrogatories and DOC purportedly answered them May 29, 1980 by attempting to use the business record option provided for by La.C.C.P. art. 1460. That option was rejected by the trial court in a September 11, 1980 judgment which ordered DOC to answer the interrogatories within thirty days. DOC filed answers to three interrogatories on October 10, 1980 and to the remaining two on November 26, 1980, or thirty-three days after plaintiff filed his motion for sanctions against DOC. On February 19, 1981, the trial court ordered DOC to answer the interrogatories in full and in compliance with the September 11, 1980 judgment. Supplementary answers made by DOC on April 16, 1981, May 15, 1981, June 11, 1981 and September 4,1981. On June 11,1981, DOC filed a motion for protective order after plaintiffs counsel refused to accept delivery of “a voluminous set of [DOC] records comprising 5,988 pages” which the deliverer, DOC’s counsel, represented “to be the entire record in connection with the case,” which delivery was accompanied by DOC counsel’s offer “to make available at plaintiff’s convenience, ..., defendant’s officer in charge of these records, for explanation, verification, or clarification.” 434 So.2d at 436. The order portion of the motion for protective order was not signed by the trial judge and no hearing was held thereon. On December 8, 1981, the trial judge reinstated the original stipulation which he had previously held to have been erroneously made and which was affirmed by us in Hampton II, 376 So.2d 980.
After reinstating the stipulation, which the trial judge accepted as a confession of DOC’s liability, a trial on the merits was held and evidence received as to plaintiff’s injuries and damages. The trial court awarded general damages of $10,000.00 and DOC appealed.
On the third appeal, we found that DOC “should have been afforded a hearing on its motion for a protective order which, in view of the record, appears to us may have some merit” and remanded with “instructions so the case can finally be completed.” 434 So.2d at 436. The instructions included one which required “an evidentiary hearing on the merits of defendant’s June 11, 1981, motion for protective order” and recognized DOC’s entitlement to a hearing on its motion to compel plaintiff to answer interrogatories and for sanctions against plaintiff. 434 So.2d at 436. In our order of remand we stated two alternatives or options available to the trial court, as follows:
If the trial court finds the [motion for protective] order has merit, it may either proceed to a trial on the merits or permit plaintiff an opportunity to pursue additional discovery based on the infor *456 mation provided in those interrogatories. [2] If the trial court finds that the motion for protective order has no merit, it may then reconsider the plaintiffs motions for sanctions, impose such sanctions as the law permits, and then proceed to try the case on the merits.
434 So.2d at 436. (Brackets supplied.)
OVERVIEW OF THE THREE DECISIONS
Hampton I gave DOC the opportunity to establish whether the stipulation was made through an error in fact. Hampton II affirmed that portion of the trial court judgment which held the stipulation was made through error in fact. Hampton III recognized DOC’s entitlement to a hearing on its motion for protective order and stated what the trial court could do, depending on the result reached after the hearing on the motion for protective order, “so the case can finally be completed.”
While the decretal portion of Hampton III does not specifically address the portion of the trial court judgment reinstating the stipulation on which the holding of DOC’s liability was based, it is implicit that we reversed the reinstatement of the stipulation because we “reversed and remanded, with instructions” instead of “affirmed in part, reversed in part, and remanded, with instruction.” Had we affirmed the portion of the judgment reinstating the stipulation, there would have been no necessity for stating the instructions which were given as a part of the remand order, setting out, in general terms, options open to the trial court.
TRIAL COURT PROCEEDINGS AFTER HAMPTON III
On August 24, 1983 plaintiff filed his motion to set for hearing DOC’s motions for protective order, to compel plaintiff to answer interrogatories, and for sanctions. The trial court heard the motions on September 16 and October 21, 1983 and February 3, 1984 and on the latter date rendered judgment denying DOC’s motion for protective order. No mention is made in the judgment, which was signed February 22, 1984, about the disposition of DOC’s motions to compel answers and for sanctions.
On February 16, 1984 plaintiff filed his motion to reimpose stipulation and for sanctions consisting of $10,847.50 as attorney’s fees. The stipulation was reimposed by judgment rendered April 27, 1984 and signed May 3, 1984. Plaintiff filed, on November 17, 1984 his motion to apply the “law of the case” procedural principle. DOC’s response, setting forth its reasons why “law of the case” should not apply, was filed February 14, 1985. The trial court held a hearing on February 15, 1985 on the “law of the case” motion, found it “to be well founded both in fact and in law”, and rendered judgment on February 15,1985 holding DOC “negligent in causing the injuries and damages of plaintiff”, limiting the trial of the case to evidence establishing “the nature and extent of the injuries and damages”, and permitting DOC to “proffer at the trial ... any and all evidence which it considers relevant to the issue of defendant’s liability or alleged lack thereof.”
TRIAL COURT’S REASONS FOR JUDGMENT (ON “LAW OF THE CASE”)
The trial judge gave oral reasons for applying “law of the case” and finding DOC liable for plaintiff’s injuries. He reasoned, in part, as follows:
[T]he last time Hampton went up [on appeal, i.e. Hampton III], it was in the context of ... the trial court ... having reimposed the stipulation at the trial on the merits and indicating, of record, that because of a stipulation the liability was fixed_ [W]hen [Hampton III was decided the Court of Appeal] referred to that finding [reimposing the stipulation] and didn’t discount it. [The organ of the court] referred to it specifically.... [The appellate court] just remanded back ... on the sole question of giving the State the opportunity to go forward on their protective order and also to clear up some other matters of discovery ... that had not been heard. And I think we’ve *457 done these two things. The court has ruled on the protective order, has reinstated the stipulation at prior hearings, and has, ... concluded those other matters that were still outstanding on behalf of the state.
Record (CA 85 0690), Vol. I, pp. 141-142. (Bracketed material supplied.)
QUANTUM TRIAL
On March 4, 1985 the trial court tried the issue of damages and took the matter under advisement. DOC proffered testimony, taken at a hearing several years earlier, as to the question of liability. The court gave oral reasons for judgment fixing quantum on April 12, 1985 and signed the formal judgment on June 5, 1985 awarding $10,-000.00 general damages, $400.00 special damages, and court costs, including expert witness fees.
The trial judge’s oral reasons for fixing the quantum are stated, in part, as follows:
The court has reviewed the medical, viewed the plaintiff ... and the extent of the scarring and the affected area.... It was a bad accident, a serious infliction of injury_ I’m'sure it was painful initially. I gather, however, from the plaintiff’s own actions, that the excruciating pain ... subsided to some extent upon receiving treatment at the New General Hospital. I think his leaving shortly after he was brought in attests to the fact that ... the initial treatment must have relieved his pain to some extent.
I don’t feel the record has established any great psychological damage caused by this burn, quite frankly. That’s my opinion about the evidence. Mr. Hampton was a troubled individual ... prior to this incident and it is ... hard to assess the additional anguish caused by this, though some, I’m sure, was incurred, particularly at the outset. The evidence also is devoid, in my opinion, of any impairment as far as his employment is concerned.... His criminal record, I’m sure, contributes to his unemployment to a greater extent than his physical ap-pearance_ I don’t think Mr. Hampton presented a hideous appearance ...; the scars in the lower face and neck are visible while clothed and, when disrobed, the areas in the chest and ... the leg become very evident. He presented somewhat of a striking appearance but not a hideous appearance when he was clothed and as he presented his testimony in the courtroom. The pictures [offered in evidence] depict the areas of disfigurement, but ... the court feels the photos present more of a marked contrast between the scarring area and his actual skin tone and color than [he did in person]_ [T]he photos are more striking, seem more disfiguring than he actually is ... as I viewed him. Certainly, no suggestion of impropriety is intended by this reference.
... [0]f all the medical testimony ... the most helpful ... is ... from Dr. Marks, ... a plastic surgeon, [who opined] that most of the injuries were the result of second degree burns.... He indicated that the depigmentation on the neck ... and the other areas ... could be corrected at a relatively nominal cost of approximately $400.00, including surgeon fees and ... confinement [at Charity Hospital of New Orleans].
... I don’t think [Hampton has] established psychological overlays in damages caused by this incident and has not established an impairment of earning capacity. Dr. Marks [opines] the injuries were not disabling as far as employment was concerned. [Dr. Marks] indicated [Hampton] had gotten a good result from the treatment [of] his injuries and ... the only disability noted was a minimal restriction on extreme extension of the neck, but [Dr. Marks] did not feel it was of a functional nature.
The court has reviewed the medical [evidence and] has viewed ..'. plaintiff ... [whose present medical] status is well defined and documented. ... [T]he Court feels that an award ... of $10,-000.00 will adequately compensate ... plaintiff for his injuries.
*458 CA 85 0835 Record, pp. 224-228. (Bracketed material supplied.)
As part of the trial judge’s reasons for judgment in the quantum trial, he observed that the controversial stipulation was reinstated by the court as a sanction “which has the effect of a judicial confession ... of negligence ... and causation” and that the stipulation was reinstated because DOC did not sufficiently satisfy discovery requests to enable plaintiff to properly present his case. Thus, the trial judge concluded that “there has been a trial on the merits [of the liability issue] and the liability is against the State.”
ASSIGNMENTS OF ERROR

CA 85 0690:

DOC assigns as error the trial court’s (1) refusal to grant the requested protective order after conducting the evidentiary hearing ordered by Hampton III, (2) finding that DOC had not answered plaintiff’s interrogatories “when ... the State had furnished all the information it had,” (3) reinstating the stipulation and ruling “law of the case” applicable, (4) awarding attorney's fees as one sanction on February 15, 1985, and (5) refusal to cast plaintiff for the “cost that ... DOC had to expend conducting research and computation for the benefit of the plaintiff.”

CA 85 0835:

DOC assigns as error the award of $10,-000.00 as general damages constituted an abuse of the trial court’s discretion.
Hampton assigns as error the trial court’s awarding less than $50,000.00 as general damages, alleging the lowest amount which could have been awarded without abusing its “much discretion.”

DOC’S FIRST, SECOND AND THIRD ASSIGNMENTS OF ERROR (CA 85 0690)

The trial court held an evidentiary hearing on DOC’s request for a protective order to curtail allegedly oppressive discovery procedures; the hearing was conducted September 16, 1983 and oral argument was made on October 21, 1983 and February 3, 1984. The requested order was refused. DOC argues the denial was an abuse of discretion because it supplied all the information it had or could obtain and, despite its best efforts, nothing completely satisfied plaintiff’s counsel.
Although DOC filed answers several times to Hampton’s interrogatories the trial court concluded that those answers did not comply with the requests for discovery and without the information plaintiff would be unable to properly present his case. Thus, the trial court properly refused to grant the protective order and properly reinstated the stipulation which has been DOC’s albatross since it was initially made. Robinson v. Miller, 423 So.2d 45 (La.App. 1st Cir.1982). In Robinson we observed, in pertinent part, that
The ultimate sanction for a recalcitrant plaintiff who fails to comply with discovery orders is dismissal of the suit, and the ultimate sanction for such a defendant is the rendering of a “judgment by default.” The trial court has much discretion in selecting the appropriate sanction for failure to comply with discovery orders and a judgment granting a sanction will not be disturbed absent a clear showing of abuse.
423 So.2d at 48.
In Robinson we held that under the facts disclosed by the appeal record “the ultimate sanction of confirmation of a substantial default judgment against the State, and thus the people of Louisiana, is not appropriate” and vacated that judgment of default.
The trial court determined that the interrogatories propounded by plaintiff were not answered adequately enough for plaintiff to properly present his case; at the same time the court observed that he did not believe DOC had acted in bad faith. The trial court apparently believed that the discovery process was in a hopeless quagmire and reinstated the stipulation on which he found liability. Our review of the *459 record fails to disclose an abuse of discretion by the trial court.
In the decretal portion of Hampton III, 484 So.2d 434 (La.App. 1st Cir.1983), we stated the trial court’s second option as . follows: “If the trial court finds that the motion for protective order has no merit, it may then reconsider the plaintiff’s motions for sanctions, impose sanctions as the law permits, and then proceed to try the case on the merits.”
On our third remand, the trial court held DOC’s motion for protective order to be without merit, reinstated the stipulation, granted plaintiff attorney’s fees of $500.00 against DOC, and ruled the procedural principle of “law of the case” applicable, basing DOC’s liability on the stipulation and law of the case principle.
We do not agree with the trial court’s observation that in Hampton III this court “didn’t discount” the reinstatement of the stipulation which took place after the remand ordered by Hampton II. In reversing the trial court in Hampton III, we sent the whole case back for a determination of the range of issues surrounding the adequacy or inadequacy of DOC’s efforts to supply complete answers to plaintiff’s interrogatories.
Thus, the “law of the case” principle is inapplicable to the instant appeal. As we observed in Brumfield v. Dyson, 418 So.2d 21 (La.App. 1st Cir.1982), “Most of the cases dealing with the law of the case principle concern reconsideration on a subsequent appeal of a question of law decided on a former appeal.” 418 So.2d at 22.
We also observed that “this doctrine is merely one of practice or court policy, and not of inflexible law, so that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in its application.” 418 So.2d at 22.
While the trial court improperly ruled that “law of the case” was applicable, it was correct in reinstating the stipulation and finding DOC liable for plaintiff’s injuries on the basis of that stipulation. The testimony of DOC employees, taken at a hearing in this litigation some years earlier, proffered by DOC at the trial which produced this latest appeal, does nothing to alter our conclusion that reinstatement of the stipulation was proper.
DOC’s first, second, and third assignments of error are, accordingly, without merit.
DOC’S FOURTH AND FIFTH ASSIGNMENTS OF ERROR (CA 85 0690)
DOC assigns as error the trial court’s imposing sanctions in the form of an attorney’s fee award to plaintiff. As we stated in Robinson, supra, the trial court has broad discretion in “selecting the appropriate sanction for failure to comply with discovery orders and a judgment granting a sanction will not be disturbed absent a clear showing of abuse.” The record, as a whole, fails to disclose an abuse of the trial court’s “much discretion” in the awarding of an attorney’s fee. Governed by the same principle, we do not believe the trial court abused its discretion in refusing to cast plaintiff for the costs which DOC incurred “conducting research and computation for the benefit of the plaintiff.” Although considerable time and effort by DOC employees was doubtlessly spent in DOC’s efforts to answer the interrogatories, the simple fact is that the trial court held those efforts did not produce the answers plaintiff was entitled to. In doing its research and computation, DOC was merely doing what it was required to do, and, unfortunately for DOC, its efforts were not deemed by the trial court to be good enough, a result which we deem not to be manifestly erroneous.
DOC’s fourth and fifth assignments of error are without merit.
QUANTUM
It is well settled that in the assessment of general damages much discretion must be left to the trial judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979); Savoie v. Rayco Shipbuilders and Repair, 484 So.2d 764 (La.App. 1st Cir.1986).
*460 “[BJefore a Court of Appeal can disturb an award made by a trial court ... the record must clearly reveal that the trier of fact abused its discretion in making its award.” Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). Coco also reiterates, succinctly, a pertinent principle which guides appellate courts in reviewing general damages awards, as follows:
... Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.
341 So.2d at 335.
Our examination of the record as a whole fails to disclose an abuse of the trial court’s very great discretion in awarding general damages of $10,000.00 under the facts of this case and, absent such finding of abuse, we cannot disturb the award. Reck v. Stevens, supra. Both DOC’s assignment of error, the alleged excessiveness of the award, and plaintiff’s assignment of error, the alleged inadequacy of the award, are without merit.
DECREE
Accordingly, the judgment appealed from in CA 85 0690, is affirmed in its entirety against the Louisiana Department of Corrections. The judgment in CA 85 0835 is affirmed. Costs of court in both appeals, at the trial level and in this court, are assessed against the Department of Corrections in the amount of $1,819.92. La.C. C.P. 2164; La.R.S. 13:5112(A).
AFFIRMED.

. As reflected by the death certificate attached to Louise J. Hampton’s Motion and Order to Substitute Party Plaintiff, Eugene Hampton died of multiple gunshot wounds on his thirty-fifth birthday, sifter the record in CA 85 0835 had been lodged in this court.