635 So.2d 199 (1994)
Charles Edward HORTON, Linda J. Horton and Timothy S. Horton
v.
Carl C. McCARY, Allied Systems, Ltd., Auto Convoy, Inc., Phoenix Enterprises, Inc., Liberty Mutual Insurance Company, Aetna Life and Casualty Insurance Company, Insurance Company of North America and Succession of Robert Clark.
No. 93-C-2315.
Supreme Court of Louisiana.
April 11, 1994.
Rehearings Denied May 12, 1994.
*200 John J. Weigel, Madeleine Fischer, Deborah A. Van Meter, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for applicant.
Dee A.U. Hawthorne, Joseph P. Williams, Kenneth D. McCoy, Jr., McCoy & Hawthorne, Jack O. Brittain, Brittain & Sylvester, Natchitoches, Caldwell Roberts, Walter Hunter, Mayer, Smith & Roberts, Shreveport, for respondent.
Nancy J. Marshall, William E. Wright, Jr., Karyn Joy Holak, Deutsh, Kerrigan & Stiles, New Orleans, Gordon E. Rountree, Rountree, Cox, Guin & Achee, Shreveport, for amicus curiae Home Ins. Co., Walter O. Hunter, Jr., Mayer, Smith & Roberts.
WATSON, Justice.[1]
The primary issue in this case is whether the trial judge abused his discretion in awarding a default liability judgment against defendants, truck driver Carl C. McCary, his employers and their insurer.

FACTS
On December 22, 1988, Charles Edward Horton, father; Linda J. Horton, mother; and Timothy S. Horton, son, were driving south from Shreveport, Louisiana, on La. Highway 1. After passing Armistead, Louisiana, the driver/father saw an accident occurring just ahead. He slowed down and pulled to the shoulder of the road. The McCary truck, a northbound eighteen-wheeler car transporter, and Robert Clark's southbound vehicle had collided. The Clark vehicle was demolished: Clark and three passengers were killed. Ahead of the Hortons, in their lane of travel, a pickup truck was showing its brake lights. After the Clark collision, the eighteen wheeler hit the pickup truck before colliding with the Horton vehicle. When the eighteen wheeler came around the pickup truck, it angled toward the Hortons' car and hit it almost headon, knocking it off the shoulder into a water-filled ditch.
Defendants are Carl C. McCary, Auto Convoy, Inc., Phoenix Enterprises, Inc., Allied Systems, Ltd. and Liberty Mutual Insurance Company. Carl McCary was an employee of Allied Systems, Ltd. Auto Convoy, Inc. and Phoenix Enterprises, Inc. are partners of Allied Systems, Ltd. Liberty Mutual is the liability insurer of McCary and his employer.
After defendants failed to comply with requests for production of documents and failed to answer interrogatories, plaintiffs filed a motion to compel compliance.
At the hearing on the motion to compel, defendants' attorney stated that his response to discovery was hung up in his clients' "approval process". (Tr. 502.) When the trial judge stated that he was going to order compliance within ten days and, if defendants did not comply, he would be forced to render a default judgment or strike defendants' defenses, defendants' counsel responded: "I understand, your Honor, and I've told them that. But maybe this will get their attention." (Tr. 504.)
The trial court rendered judgment on November 13, 1991, ordering compliance within ten days. The judgment also stated:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if defendants fail to obey this order, the court will order such penalties as are provided by Louisiana Code of Civil Procedure Article 1471, which penalties include, inter alia, the granting of a judgment by default against the disobedient party. (Tr. 237.)
After defendants answered and responded, plaintiffs filed a motion for relief, alleging that the material was incomplete and nonresponsive. Plaintiffs asked that defendants be held in contempt and a default judgment be rendered against them.
At the subsequent hearing on December 19, 1991, plaintiffs' counsel noted that trial *201 was fixed for January 21, 1992, a first fixing on that date.
Many responses were described as illegible. The response to Interrogatory Number 8 appeared suspect. Interrogatory Number 8 asked:
Were any tests, inspections, or measurements made or taken with respect to the accident scene or any object involved in the accident? If so, please state:
a. The subject of each test, inspection, or measurement;
b. The name and address of the person; who conducted each test, inspection, or measurement;
c. The date on which each test, inspection, or measurement was performed;
d. The name and address of the person now having custody of any written report concerning each test, inspection, or measurement. (Tr. 175.)
The entire response was:
State Troopers Woodrow Anderson and Audie A. VanZandt made certain measurements at the accident scene. (Tr. 266.)
Plaintiffs' counsel commented:
We asked about measurements by any of your witnesses. And the only two answers we got is the state troopers made measurements. Now that may or may not be true, but I don't believe that Mayer, Smith and Roberts is going to come to court and defend a serious case of this nature without their expert having made measurements on the ground. Now Mr. Hunter may stand up here in a minute and say it's true. And, if so, I will withdraw my question. But I just.... right now, I don't believe it. (Tr. 522-23.)
Defense counsel stated:
From the very beginning in this case we have told Ms. Hawthorne that Luther Cox was on the scene at the beginning. And, quite frankly, that's what he's told us. I'm sorry to say, but Mr. Cox and his office has told me that they have not taken any measurements. That's all I can say. I find it surprising too, Your Honor, .... But the only measurements that we are aware of are the ones by the state troopers that have been presented in this matter. (Tr. 538-39.)
In a separate case arising out of the same accident, defendants' response to the identical question establishes that defendants' adjuster had made comprehensive measurements. The proffer of the response in the separate case is accepted for clarification of this record. It establishes that the response to Interrogatory Number 8 was incorrect, misleading and incomplete.
In order to verify the truck driver's trip record, plaintiffs attempted to locate his fuel and expense records. Defendants' response was:
This material is located in a warehouse in the Georgia office of Auto Convoy, Limited, and could take days of retrieval and finding. Plaintiffs counsel is welcome to be given access to the material to review.... (Tr. 517.)
The trial court concluded that there was a pattern of withholding information on the part of defendants. In sanctioning the defendants, the trial court made the following observations:
Mr. McCoy mentioned in his argument a few minutes ago that they had an adjuster on the ground immediately. They had to know that was going to become of significance. Every time there's an accident of this magnitude there are questions about whether that driver was under the influence of alcohol, or illicit substances, controlled dangerous substances, where he had been, how many hours he had been driving. Or what his route was. All of those things. And if that information can't be supplied at this time it just appears that it's trying to be hidden. And that's what jumps out at the Court. I realize it's a very heavy sanction to put on anybody to say that a default judgment is going to [sic] rendered on the question of liability but that's where I'm leaning at this time is just to say let's try this case on quantum and move forth with it. If these defendants want to come in here and say, ah ... unavailable, we don't know, it's in a warehouse *202 in Georgia, you want it, you go over to the warehouse and get it.
.... .
I'm ready to rule on this case. The Court rules that the defendants in this matter have followed a pattern of concealing information which is clearly discoverable. Not only would it lead to relevant and admissible evidence, it is relevant and admissible evidence, and by hiding that evidence the defendants have placed the plaintiffs in an untenable and unfair position and as a result there will be judgment, a default judgment entered in favor of the plaintiffs on the issue of liability. This case will be tried by a jury in January on the issue of quantum only. (Tr. 570-71.)
Attached to defendants' original writ application is the affidavit of Julia Jessup, director of insurance and claims for Allied Industries. Jessup's affidavit is filed and considered for purposes of this proceeding; her testimony may be presented in further hearings according to the Code of Civil Procedure. Her affidavit states that defendants' attorney was retained by the insurer, Liberty Mutual. Julia Jessup's duties included preparing information for defendants' discovery responses. According to her affidavit, she formulated and mailed draft responses to the attorney on July 26, 1991. She was not advised that the responses were inadequate or that sanctions were being considered. She did not learn until January 18, 1992, that a default liability judgment had been imposed as a sanction for defendants' failure to properly respond to discovery. All of this is directly contrary to representations made by defendants' then counsel to the trial court.
The $20,000 policy limit of the Clark automobile was paid to Clark's guest passengers. The Horton plaintiffs' claims against Clark's insurer, Louisiana Indemnity Company, were dismissed with prejudice. Although Louisiana Indemnity Company was given a summary judgment of dismissal after paying its policy limits, the Succession of Robert Clark was a defendant at trial.
The Hortons' insurer made medical payments and paid the uninsured motorist policy limits of $500,000 on the Horton automobile. The insurer, Insurance Company of North America, intervened to recover $515,000.
After defendants were unable to obtain appellate relief from the default judgment on liability, the parties agreed to a separate trial on the issue of damages, reserving all liability issues. Trial was held on damages beginning on January 21, 1992.
At the jury trial on damages, photographs documented the severity of the impact between the McCary truck and the Horton car. Mr. Horton, a successful 45-year-old executive, suffered permanent brain damage. Because of his mental deficit, double vision and emotional problems, he is unable to work. Mrs. Horton will probably have residual pain for the rest of her life. Tim Horton, a 19-year-old professional baseball prospect, has a 5 percent disability, which has destroyed his college baseball career and any professional opportunity.
The jury awarded Charles Edward Horton damages of $1,965,586.63; Linda J. Horton, $538,177.81; and Timothy S. Horton, $457,420.41. The intervenor, Insurance Company of North America, was given a judgment for $515,000, and the medical intervenor, Bluebonnet Administrators, was given a judgment for $58,017.
The court of appeal affirmed the judgment. Horton v. McCrary, 620 So.2d 918 (La.App. 3d Cir.1993). A writ was granted to consider the default judgment on liability. 629 So.2d 1141 (La.1993).

LAW
LSA-C.C.P. art. 1471 sets out the sanctions available against a party failing to comply with discovery orders. These sanctions include the following:
(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

*203 (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.
(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Paragraphs (1), (2), and (3) of this Article, unless the party failing to comply shows that he is unable to produce such person for examination.
There is a distinction between the sanctions available for failure to comply with discovery and the sanctions available for disobedience of court ordered discovery. MTU of North America, Inc. v. Raven Marine, Inc., 475 So.2d 1063 (La.1985). Refusal to comply with court ordered discovery is a serious matter. See Chilcutt v. U.S., 4 F.3d 1313 (5th Cir.1993). Trial judges must have severe sanctions available to deter litigants from flouting discovery orders. National Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). Note, The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions, 91 Harvard L.Rev. 1033 (1978).
The Louisiana rule, like Federal Rule 37, allows the trial court to sanction a disobedient party with dismissal or a default judgment. Both dismissal and default are draconian penalties which should be applied only in extreme circumstances. Barnhill v. U.S., 11 F.3d 1360 (7th Cir.1993); Allen v. Smith, 390 So.2d 1300 (La.1980). Because the sanctions of dismissal or default involve property rights, those sanctions are generally reserved for the most culpable conduct. See Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897); Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909); and Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).
Federal district courts consider four factors before granting a default judgment: (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party's trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney. Batson v. Neal Spelce Associates, Inc., 765 F.2d 511 (5th Cir.1985); U.S. for Use of M-CO Const. v. Shipco General, 814 F.2d 1011 (5th Cir. 1987).
Dismissal and default are generally reserved for those cases in which the client, as well as the attorney, is at fault. Compare Allen v. Smith, 390 So.2d 1300 (La.1980). The record must support "a finding that the failure was due to ... wilfulness, bad faith, or fault." 390 So.2d at 1302.
Although the federal courts allow a final judgment on the merits as a default sanction, at least one Louisiana court has interpreted LSA-C.C.P. art. 1702 to require proof of a prima facie case. Clark v. Clark, 358 So.2d 658 (La.App. 1st Cir.1978).

CONCLUSION
Defendants, through counsel, gave incorrect and incomplete responses to discovery. The responses were given shortly before the trial date, subjecting plaintiffs to possible surprise and prejudice. Defendants had been warned, through counsel, that further recalcitrance would incur a severe sanction. Here, as in Shipco, defendants have new counsel and contend that their previous counsel was at fault. Jessup's affidavit indicates that the prior attorney failed to properly communicate with his clients.
Since there is no evidence that the clients here participated in violating the trial court's discovery orders, the trial court erred in granting a default judgment on liability. The default judgment on liability must be vacated and the case remanded. On remand, the trial court is ordered to conduct a hearing in order to determine who was responsible for failure to comply with discovery orders. *204 If the clients were innocent parties, no sanctions should be imposed on them. To the extent that the trial judge determines defendants were individually responsible for the incomplete and incorrect responses to the court-ordered discovery, the trial judge may order appropriate sanctions. The sanctions imposed should not extend to a default judgment on liability. Criteria to be considered in imposing any sanctions are the prejudice to plaintiffs and the willfulness of defendants.
Additionally, the trial court must determine whether counsel for defendants failed to comply with orders of the court or misled the court and, if so, the court may determine appropriate sanctions.
Following the hearing, a new trial is ordered on liability. At trial, the fault of all parties involved in the accident should be quantified.
On the issue of damages, defendants consented to the separate trial. The court of appeal carefully reviewed the damages fixed by the jury and affirmed. The jury did not abuse its vast discretion in the awards. Therefore, the damages fixed by the jury and affirmed by the court of appeal are affirmed and must be apportioned according to fault.
For the foregoing reasons, the judgment of the court of appeal is affirmed insofar as it affirmed the damages fixed by the jury. The judgment of the court of appeal is reversed insofar as it affirmed the trial court's default judgment on liability. The case is remanded to the trial court for hearings on the issue of sanctions and a trial on liability.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
KIMBALL, J., dissents and assigns reasons.
CHARLES A. MARVIN, J. Pro. Tem., dissents for reasons assigned by KIMBALL, J.
MARCUS, Justice (concurring in part and dissenting in part).
The trial judge's erroneous grant of a default judgment on liability had the effect of forcing defendants to consent to the trial on damages. Trial on damages separate from liability may be an advantage or disadvantage to defendants. Nonetheless, under the circumstances, I would follow the dictates of La.Code Civ.P. art. 1562 requiring the consent of all parties rather than the order by this court that a new trial be ordered on liability only. Accordingly, I concur in the reversal of the default judgment on liability and the remand for a hearing on the issue of sanctions but dissent from the majority's not ordering a new trial on both liability and damages unless consented to by the parties.
KIMBALL, Justice, dissenting.
I respectfully dissent from the majority opinion. The majority remands the case for a hearing to determine who was responsible for failure to comply with the discovery orders. Even if the trial court determines the defendants were individually responsible for the failure to comply, however, it is directed that the "sanctions imposed should not extend to a default judgment on liability."
Even were I to agree a remand is necessary in this case, the majority errs in precluding the trial court from granting a default judgment on liability. Should the trial judge determine the failure to comply with the discovery order was caused by "willfulness, bad faith, or fault" on the part of the defendants, as opposed to their counsel, then under Allen v. Smith, 390 So.2d 1300 (La. 1980) and its progeny, the trial court will not be found to have abused its discretion if it renders a default liability judgment in favor of the plaintiffs.[1]
*205 In any case, however, I do not believe a remand for a hearing is necessary. The standard of review of an order granting a default judgment on the issue of liability under La.C.C.P. art. 1471 is whether the trial court has abused its discretion in ordering the dismissal with prejudice of the plaintiff's claim against one of the defendants for failure to permit or provide discovery.[2] Not only is the trial court's choice of sanction subject to the abuse of discretion standard of review, but as with any other case, the trial court's factual findings cannot be reversed by a reviewing court where there is a reasonable factual basis in the record for such a finding and where such a finding is not clearly wrong. Stobart v. State through Dept. of Transportation and Development, 617 So.2d 880 (La.1993) ("[T]he issue to be resolved by a reviewing court is not whether the factfinder's conclusion was a reasonable one.... [R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony").
In this case, the trial court, after an extensive hearing, concluded the fault for the failure to comply with the discovery order rested with the defendants and not with their counsel. While this factual finding might have been based mainly on the representations of the defendants' counsel, as the court of appeal in this case noted, "[o]ur system of representative litigation gives the trial court the right and duty to rely on the representations made by counsel.... To accept the argument made by defendants we would have to disregard counsel's representative role as advocate for his client(s), with his correlative duty as an officer of the court."[3]Horton v. McCary, 620 So.2d 918, 926 (La. App. 3d Cir.1993).
Because the trial judge was entitled to accept defendants' counsel's statements as true, there was a reasonable basis in the record upon which he could conclude that the fault for the failure to comply with the discovery order rested with defendants and not their counsel. The majority therefore errs in concluding "there is no evidence that the clients here participated in violating the trial court's discovery orders." Furthermore, in order to conclude that the trial court's finding was manifestly erroneous, the majority relies on an affidavit attached to defendants' writ application to this court. This is not a part of the record on appeal and, in my view, should not be considered in our determination of whether the trial court was manifestly erroneous in concluding the entry of a default judgment was proper where it had found the failure to comply with discovery was due to the fault of the defendants.
In sum, I disagree with the majority's decision to remand this case for a hearing, and even if a remand were necessary, I would not preclude the trial court from granting a default judgment on liability. Accordingly, I respectfully dissent.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Ortique, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993). Judge Charles A. Marvin, Chief Judge, Court of Appeal, Second Circuit, sitting in place of Justice James L. Dennis.
[1] See also Lafourche Gas Corp. v. Daniel Oil Co., 484 So.2d 734 (La.App. 1st Cir.1986); Succession of Miller, 432 So.2d 1043 (La.App. 1st Cir. 1983); Magri v. Westinghouse Elec., Inc., 590 So.2d 830 (La.App. 4th Cir.1991); and Rogers v. Charity Hospital of Louisiana in New Orleans, 537 So.2d 1267 (La.App. 4th Cir.1989); all holding the granting of a default judgment or the dismissal of a petition for the failure to comply with a discovery order will be an abuse of discretion where the record does not establish the failure was due to the willfulness, bad faith or fault of the party himself, as opposed to his counsel.
[2] See also Hampton v. State, 496 So.2d 452 (La. App. 1st Cir.), writ denied, 497 So.2d 1389 (1986); Skidmore v. Salvadras, 496 So.2d 435 (La.App. 1st Cir.1986); Shaw v. Champlin Petroleum Co., 501 So.2d 1054 (La.App. 2nd Cir.), writ denied, 504 So.2d 876 (1987); Magri v. Westinghouse Elec., Inc., 590 So.2d 830 (La.App. 4th Cir.1991); Rogers v. Charity Hospital of Louisiana in New Orleans, 537 So.2d 1267 (La.App. 4th Cir.1989); Fulgham v. An Unknown Police Officer, 480 So.2d 417 (La.App. 4th Cir.1985); all holding the trial court is vested with much discretion in imposing sanctions for the failure to comply with a discovery order and its choice of sanctions will not be reversed absent a clear showing that it abused that discretion.
[3] As the court of appeal noted, and the record reveals, when the trial judge initially entered the order that if the defendants failed to comply with discovery he would grant a judgment by default against them, their attorney responded: "I understand, Your Honor, and I've told them that. But maybe this will get their attention." This order was served on the defendants through their attorney. Furthermore, at the later hearing on whether the defendants had complied with this order, defendants' attorney repeatedly stated his inability to properly respond to discovery was the fault of his clients. For example, he stated "it has been a flustering experience both for her [plaintiffs' counsel], her law firm, and for me and my law firm in obtaining the answers to interrogatories and the requests for production."