53 So.3d 636 (2010)
Licia DUFFY, Wife of/and Terrence Duffy
v.
PENDLETON MEMORIAL METHODIST HOSPITAL and Strato Medical Corporation, d/b/a Pfizer Hospital Products Group.
No. 2010-CA-0660.
Court of Appeal of Louisiana, Fourth Circuit.
December 8, 2010.
*637 Jack H. Tobias, New Orleans, LA, for Plaintiffs/Appellants.
Dwight C. Paulsen III, Natalie J. Parria, Bradley Murchison Kelly & Shea, LLC, New Orleans, LA, for Defendant/Appellee Pendleton Memorial Methodist Hospital.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge MAX N. TOBIAS, JR.).
PATRICIA RIVET MURRAY, Judge.
Plaintiffs, Licia and Terry Duffy, appeal the trial court's judgment dismissing their claims against one defendant, Pendleton Memorial Hospital ["PMH"], as a sanction for the plaintiffs' failure to comply with court-ordered discovery. For the reasons that follow, we reverse.

FACTS AND PROCEEDINGS BELOW
The plaintiffs allege that Licia Duffy appeared at PMH on February 28, 1996, for the implantation of a venous access device, also known as a Life Port, at the recommendation of her oncologist, Dr. Leonard C. Thomas. Although Strato Medical Corporation ["Strato"] manufactured the Life Port, the plaintiffs claim that PMH was a non-manufacturer seller of the device. Dr. James E. Brown, a general surgeon, performed the necessary surgery for the implantation of the Life Port.
Licia Duffy began to experience pain in October 1996, and was monitored by Dr. Thomas. When the pain worsened, Dr. Thomas referred Ms. Duffy back to the surgeon, Dr. Brown. Dr. Brown determined that the catheter to the Life Port had fractured and that a fragment of the catheter had been retained in Ms. Duffy's pulmonary artery. Ms. Duffy then underwent further surgical procedures to have the Life Port and the fragment removed. Plaintiffs allege that Ms. Duffy sustained permanent cardiac damage as a result of the fracture of the catheter.
On February 6, 1998, the plaintiffs filed a Complaint of Medical Malpractice with the Louisiana Patient's Compensation Fund against PMH, Dr. Thomas, and Dr. Brown. On that same day, the plaintiffs filed a petition in Civil District Court for the Parish of Orleans against Strato and PMH. The medical review panel issued an opinion on March 16, 1999, finding that the standard of care owed to Ms. Duffy was *638 not breached by PMH, Dr. Brown, or Dr. Thomas. Thereafter, the plaintiffs amended their district court petition to add Dr. Brown and Dr. Thomas as defendants.
During the course of the litigation, Strato settled the matter and was dismissed from the lawsuit.
On April 22, 2004, the plaintiffs sought to move the litigation forward by filing a motion to establish cut-off dates. Pursuant to that motion, a trial date was set but was later continued on the plaintiffs' motion, with the consent of the defendants, as discovery was not complete. The motion to continue contained a request for the court to set a status conference to select a new trial date. At the status conference, a new trial date of November 28, 2005, was selected. Due to Hurricane Katrina, Dr. Brown and Dr. Thomas filed a motion to continue the November 28, 2005 trial date with the consent of the plaintiffs. Thereafter, the plaintiffs filed another motion to establish cut-off dates and a trial date. On June 4, 2008, the court set a trial date of April 6, 2009. The parties resumed discovery.
On December 30, 2008, PMH issued requests for admissions and first supplemental interrogatories and requests for production of documents to the plaintiffs. On January 29, 2009, PMH filed a motion to compel responses to this discovery, which motion was served on counsel for the plaintiffs. Thereafter, through counsel, the plaintiffs responded to the discovery. However, the plaintiffs themselves did not sign the discovery responses; only the plaintiffs' counsel signed.
Believing the responses to the discovery were deficient, counsel for PMH sent the plaintiffs' counsel a six-page letter, dated March 19, 2009, detailing the problems PMH had with the responses. The letter also stated that the required Rule 10.1 conference had been scheduled to discuss the deficient responses and that PMH intended to ask the court to reset its original motion to compel if the plaintiffs failed to cure the defects in the discovery responses. When the plaintiffs failed to respond, the April 6, 2009 trial date was continued, and PMH requested that the court reset its motion to compel discovery.
On June 19, 2009, the court heard the motion. At the hearing, the plaintiffs' counsel indicated that his answers to the discovery request had not changed; nevertheless, he stated, "I will respond to his six-page letter and I will endeavor to obtain the name of the manufacturer's representative who will testify." The trial court then granted the motion to compel, ordering the plaintiffs' counsel to submit the indicated responses within forty-five days. The court also rendered a written judgment ordering that the plaintiffs submit their responses to PMH by August 3, 2009.
On August 10, 2009, PMH issued a letter to plaintiffs' counsel noting that the due date for the responses had passed without PMH's having received them. The letter also stated that PMH would file a motion to dismiss if it had not received the responses by August 12, 2009.
When PMH's counsel again did not receive anything from the plaintiffs, PMH filed a motion to dismiss the plaintiffs' claims against it on account of the plaintiffs' failure to comply with court-ordered discovery. The trial court heard the matter on October 2, 2009, and granted the motion to dismiss. On October 8, 2009, the court rendered a written judgment to that effect. After the trial court denied the plaintiffs' motion for rehearing,[1] the plaintiffs timely filed a motion for appeal.

*639 ISSUES
The sole issue on appeal is whether the trial court abused its discretion by granting the motion to dismiss the plaintiffs' claims against PMH.

APPLICABLE LAW
Trial courts are granted wide discretion in determining appropriate sanctions for a party's failure to comply with discovery orders. At Your Service Enterprises, Inc. v. Swope, 2007-1620, p. 4 (La.App. 4 Cir. 1/14/09), 4 So.3d 138, 141, citing Magri v. Westinghouse Elec., Inc., 590 So.2d 830, 831 (La.App. 4th Cir.1991). Appellate courts will not reverse a trial court's decision in that regard absent a clear showing of an abuse of that discretion. Id.
The law permits the imposition of sanctions for a party's failure to comply with a court order compelling discovery. See La. C.C.P. art. 1471. Moreover, there is a distinction between the sanctions available for the failure to comply with discovery and those available for disobedience of court-ordered discovery. Swope, p. 7, 4 So.3d at 143 (quoting Medical Review Panel Proceedings of Peter v. Touro Infirmary, 2005-0317, p. 4 (La.App. 4 Cir. 7/6/05), 913 So.2d 131, 134). La. C.C.P. art. 1471(A) provides, in pertinent part:
If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
* * *
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
Although the article provides that dismissal is a remedy available to courts for a party's failure to comply with court-ordered discovery, the Louisiana Supreme Court has acknowledged that dismissal is a draconian penalty and is thus reserved for extreme circumstances and only the most culpable conduct. Horton v. McCary, 93-2315, p. 10 (La.4/11/94), 635 So.2d 199, 203. In Horton, the Supreme Court adopted from the federal district courts four factors to be considered when evaluating whether a failure to comply with discovery mandates dismissal. Those factors are: (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violation prejudiced the opposing party's trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203; see also Hutchinson v. Westport Ins. Corp., 2004-1592, p. 3 (La. 2004), 886 So.2d 438, 440. Recently, this court stated:
Dismissal is generally appropriate when the client, as well as the attorney, is at fault, and the record must evidence that the failure was due to willfulness, bad faith, or fault of the noncompliant party. . . . Furthermore, this Court has held that the ultimate sanction of dismissal should be imposed only when the noncompliant party is clearly aware that his failure to comply will result in dismissal. See Medical Review Panel Proceedings of Peter v. Touro Infirmary, 2005-0317, p. 5 (La.App. 4 Cir. 7/6/05), 913 So.2d *640 131, 134; LeBlanc v. GMAC Financial Services, 97-0131 (La.App. 4 Cir. 5/28/97), 695 So.2d 1106, 1108.

Cantuba v. American Bureau of Shipping, 2008-0497, p. 7 (La.App. 4 Cir. 6/3/09), 31 So.3d at 397, 413, on rehearing (1/13/10).
In Cantuba, the plaintiffs were the relatives and personal representatives of Filipino and Greek seamen who had been aboard a vessel that had disappeared while in international waters. The plaintiffs sued multiple defendants, including the shipbuilder, Mitsubishi Heavy Industries ["MHI"] in Orleans Parish Civil District Court. The Filipino plaintiffs were ordered to appear in New Orleans in July of 2003 for depositions scheduled by counsel for MHI. However, they were unable to secure visas due to the more stringent restrictions on travel following September 11, 2001. Counsel for the Filipino plaintiffs suggested taking the depositions by video teleconferencing, but this option was rejected by MHI. MHI then filed a motion to dismiss the claims of the Filipino plaintiffs, but the trial court on February 4, 2005, instead ordered the Filipino plaintiffs to re-apply for visas to travel to the United States. Id., p. 4, 31 So.3d at 411. Thereafter, MHI filed supplemental interrogatories to determine whether the applications for visas had been re-filed. The answers failed to show that any applications for visas had been re-filed. MHI filed a second motion to dismiss the Filipino plaintiffs' claims in June of 2007, which the trial court granted. Id., p. 5, 31 So.3d at 411.
Counsel for the Filipino plaintiffs moved for a new trial on the grounds that problems due to Hurricane Katrina in Louisiana and Typhoon Durian in the Philippines had made communication with the Filipino plaintiffs difficult. The motion also indicated that the applications for visas had been re-filed on July 14, 2007. The trial court denied the motion for new trial, and the Filipino plaintiffs appealed. Id., pp. 5-6, 31 So.3d at 412.
After initially affirming the trial court's dismissal of the claims, on rehearing this court considered the four Horton factors and determined that the trial court had abused its discretion. Id., p. 8, 31 So.3d at 413. In so concluding, this court noted that the record was devoid of any evidence that the Filipino plaintiffs had ignored the trial court's orders willfully or in bad faith; rather, we indicated that forces beyond the plaintiffs' control had created obstacles to their obtaining of the visas. Additionally, we noted that there was no evidence that the Filipino plaintiffs had been made aware that dismissal could result from their failure to comply with the court order. Id. Therefore, this court reversed the trial court's dismissal of the claims of the Filipino plaintiffs. Id., pp. 8-9, 31 So.3d at 413-414.[2]
Similarly, in Raspanti v. Litchfield, XXXX-XXXX, 2006-0331 (La.App. 4 Cir. 11/21/06), 946 So.2d 234, this court held that the trial court's dismissal of the plaintiff's action on account of the plaintiff's failure to comply with a discovery order was an abuse of discretion. In that case, the plaintiff's counsel had received a request for discovery, but had not forwarded the information to plaintiff, believing the plaintiff had also been served. Defendant filed a motion to compel, which the trial court granted. 2005-1512, pp. 3-4, 946 So.2d at 244. However, the order compelling *641 discovery did not provide that noncompliance would result in dismissal.
After reviewing the record and applying the four Horton factors, this court concluded that there was no evidence showing the plaintiff's actions were willful, in bad faith, or through his own fault. Id., p. 16, 946 So.2d at 244. We also noted that the record was devoid of any evidence indicating that the plaintiff had been aware that his failure to comply would result in dismissal of his case. Id., p. 15, 946 So.2d at 244.
Just as in Cantuba and Raspanti, the plaintiffs in the instant case contend that the trial court abused its discretion by dismissing their action against PMH even though the failure to respond to discovery was not their own fault, but the fault of their counsel. In addition, the plaintiffs argue the dismissal was improper because they were never made aware that dismissal would result from noncompliance with the court's order regarding discovery. Conversely, PMH relies upon this court's decision in At Your Service Enterprises, Inc., v. Swope, supra. In Swope, the plaintiff was a contractor that filed suit seeking payment for renovations made to Mr. Swope's home. Mr. Swope filed a reconventional demand. 2007-1620, p. 1, 4 So.3d at 139. The plaintiff propounded discovery, which went unanswered. The plaintiff filed a motion to compel, which was heard approximately five weeks prior to the scheduled trial date. After hearing the motion, the trial court ordered counsel for Mr. Swope to provide discovery responses within fourteen days and advised the plaintiff's counsel that he could pursue sanctions if the responses were not timely received. The court and counsel for both parties signed a consent judgment to that effect in open court. However, no responses were tendered, and neither Mr. Swope nor his counsel appeared at the pretrial conference or the trial. At trial, the trial court allowed the plaintiff to put on evidence, then granted judgment in favor of the plaintiff, and dismissed Mr. Swope's reconventional demand. Mr. Swope filed a motion for new trial, but again neither he nor his counsel appeared at the hearing on the motion, which was denied. Id., p. 2, 4 So.3d at 140.
On appeal, this court affirmed, noting that Mr. Swope had been granted multiple opportunities to be heard but had repeatedly failed to appear. Id., pp. 8-9, 4 So.3d at 144. In addition, we found that Mr. Swope's violations were willful; that less drastic sanctions would not be effective considering Mr. Swope's repeated failure to appear or to comply with court-ordered discovery; and that Mr. Swope's actions unequivocally had prejudiced plaintiff's trial preparation. Id., p. 12, 4 So.3d at 146.
In the instant matter, PMH argues that like Mr. Swope, the Duffys were provided with not just one, but with three opportunities to be heard. However, we find the instant case to be clearly distinguishable from Swope. In Swope, this court noted that, although the record failed to reveal whether the noncompliance was attributable to Mr. Swope himself or to his counsel, the case presented "an unusual set of facts" because Mr. Swope not only had failed to answer court-ordered discovery, but also had failed to appear for trial. Id., p. 9, 4 So.3d at 144. Therefore, this court relied partially on La. C.C.P. art. 1672, which provides that a party's failure to appear on the date of trial shall result in the dismissal of his claims.[3] Significantly, *642 this court noted that "a different result might be reached had Appellant [Mr. Swope] merely failed to answer the court-ordered discovery. . . ." Id., p. 12, 4 So.3d at 146.
In the instant case, unlike in Swope, the trial court never informed counsel for the plaintiffs that sanctions would result from noncompliance. Moreover, as in Raspanti and Cantuba, there is no evidence in this record showing that either the Duffys or their counsel were notified by the court that their claims against PMH would be dismissed in the event of their noncompliance with the court order. Additionally, we find that the application of the Horton factors to this case warrants a reversal of the trial court's dismissal of the plaintiffs' claims against PMH. Regarding the first factor, we note that the record is devoid of any evidence indicating the plaintiffs' counsel notified the Duffys of the issuance of the requests for admissions, first supplemental interrogatories, or requests for production of documents. The responses were signed by counsel for the Duffys, not the Duffys themselves. Similarly, the record does not show that the Duffys were aware that the motion to compel was filed and/or granted. There is no indication that they were personally served or appeared at the hearing on the motion to compel. We therefore find no evidence that the plaintiffs were willful or acted in bad faith by failing to respond to the court-ordered discovery.
Regarding the second Horton factor, the record demonstrates that less drastic sanctions would be effective. At the hearing on the plaintiffs' motion for rehearing of the dismissal, the plaintiffs' counsel indicated that he had not responded to the discovery as he had been ordered to do because he did not have an expert regarding PMH's duty to supply Ms. Duffy with the instructive pamphlet included with Life Port.[4] As noted by the trial court, that oral recitation did not relieve plaintiffs' counsel of the obligation to respond in writing to PMH's discovery request. However, citing this court's opinion in Raspanti, the plaintiffs' counsel stated that any sanction imposed should fall upon him rather than upon the Duffys. We therefore find that the less drastic sanctions provided for by La. C.C.P. art. 1471(C) would be effective if imposed upon the plaintiffs' counsel in this case.[5]
With regard to the third Horton factor, PMH argues that its trial preparation has been prejudiced because the plaintiffs' counsel has asserted a whole new theory of the case. We reject this argument as the record fails to reveal that it was a basis for the trial court's decision to dismiss. We do note, however, that the trial court seemed to place heavy emphasis on the fact that this suit was filed in 1998. Nevertheless, just as in the Cantuba case, which had a similar duration, not all of the delays were the fault of the Duffys. PMH's codefendant, Strato, had difficulty locating evidence and documents. The current counsel for the Duffys became more involved in the case after the illness of his co-counsel. Hurricane Katrina delayed an earlier trial setting. Therefore, *643 to the extent that PMH may have been prejudiced, we find that such prejudice did not warrant dismissal of the plaintiffs' claims considering the presence of other delay-causing factors not attributable to the Duffys.
Finally, with regard to the fourth Horton factor, there is no evidence that the Duffys participated in the violation of the court order or even were aware of the court order. The fault lies with their counsel. As such, we conclude that the draconian penalty of dismissal was not warranted in this case.

CONCLUSION
Accordingly, we find the trial court abused its discretion by dismissing the plaintiffs' claims against PMH on account of the failure to comply with court-ordered discovery. The judgment of the trial court is therefore reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TOBIAS, J., Concurs and Assigns Reasons.
I respectfully concur.
I write separately to emphasize that under our jurisprudence an order of dismissal or another draconian sanction for failure to comply with court-ordered discovery is only allowed when the client, as distinguished from the client's lawyer alone, has been notified in advance that the client's case will be dismissed or other draconian sanction imposed if the discovery order is not complied with. See Horton v. McCary, 93-2315, p. 10 (La.4/11/94), 635 So.2d 199, 203. This can present a party's counsel seeking the discovery in a difficult position because he/she may not have a way of notifying his/her opponent's client directly without violating the Rules of Professional Conduct for communicating with his/her opponent's client directly. The only practical way around the conundrum is for the party seeking compliance with a discovery order to obtain an order of court, preferably written, directing that service of the order requiring discovery be served upon the party from whom the discovery is sought. See Raspanti v. Litchfield, 05-1512, 06-033, p. 1 (La.App. 4 Cir. 11/21/06), 946 So.2d 234, 245 (Tobias J., concurring).
NOTES
[1] Although the plaintiffs captioned their motion as one for rehearing, in substance it was a motion for new trial. Procedurally, Louisiana law does not provide for a "rehearing" by the trial court of its own final judgment.
[2] However, finding that sanctions were warranted against counsel for the Filipino plaintiffs, this court remanded the matter to the trial court for the imposition of sanctions against counsel pursuant to La. C.C.P. art. 1473, which addresses the failure to attend depositions. Id., pp. 9-10, 31 So.3d at 414-415.
[3] La. C.C.P. art. 1672 A(1) states "A judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for trial. In such case, the court shall determine whether the judgment of dismissal shall be with or without prejudice."
[4] The transcript reflects that counsel indicated he did not believe he needed such an expert to prove his case, but the trial court disagreed.
[5] La C.C.P. art. 1471(C) provides, in pertinent part: "In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure. . . ."