KUHN, J.,
agreeing in part, dissenting in part.
|TOn the spoliation of evidence ruling, I disagree with the portion of the majority opinion affirming the trial court’s determination that an adverse presumption instruction shall be given to the jury regarding the contents of the Abreo file. Although I agree that the trial court has broad discretion concerning what sanction to impose, including giving an adverse presumption jury instruction, it is neither necessary nor appropriate for this Court to review this interlocutory ruling at this point in the proceedings. The only pleadings at issue in this appeal are motions to compel, a motion for sanctions, and a motion for contempt related to discovery requests. Trial on the merits has not yet been held. The issue of an adverse presumption jury instruction is more properly reserved until trial, since a trial court has the authority to reconsider such interlocutory evidentiary rulings based on the totality of the evidence presented at trial. Our standard of review on discovery, evidentia-ry rulings, and sanctions arising therefrom is abuse of discretion. See Hutchinson v. Westport Insurance Corporation, 04-1592 (La.11/8/04), 886 So.2d 438, 440; Riverside Recycling, LLC v. BWI Companies Inc. of Texas, 12-0588 (La.App. 1st Cir.12/28/12), 112 So.3d 869, 874. Addressing this interlocutory ruling in this appeal precludes any further consideration of the issue by the trial court, even after a full trial. The Code of Civil Procedure affords the parties an opportunity to object to particular jury instructions prior to their being given to the jury. See La. C.C.P. art. 1793. The majority’s decision on the ^spoliation of evidence ruling suggests that the parties will be deprived of the opportunity to object to the adverse presumption jury instruction.
For these reasons, I dissent from the portion of the majority opinion affirming the ruling that an adverse presumption jury instruction shall be given. I agree with the majority opinion in all other respects.
WELCH, J., agreeing in part and dissenting in part.
hi agree with the majority opinion insofar as it affirms the trial court’s October 23, 2012 judgment denying the motion for protective order filed by BancorpSouth Bank (“the Bank”) and granting Kleinpeter Trace and Mr. Charles Wallace Glad-ney’s motion to compel on the basis that La. R.S. 6:333(I)(2) did not establish a privilege in favor of the Bank. I also agree with the majority opinion to the extent that it affirms the trial court’s January 8, *642 2013 judgment ordering that an adverse presumption instruction be given to the jury as to the contents of Ms. Abreo’s daily work file. However, I disagree with the majority opinion in all other respects and would affirm the May 15, 2013 judgment of the trial court in its entirety.
In reversing and vacating the May 15, 2013 judgment, the majority is excusing the conduct of the Bank and its attorneys during the discovery process, which the trial court found was so egregious that it warranted the imposition of the “draconian”[1] sanction of dismissing the Bank’s main demand and striking its only defense of prescription. The majority does this by finding that the sanctions imposed where not supported by the record; however, thorough review of the lengthy record in this case fully supports the trial court’s factual determination that the Bank’s failure to comply with discovery was willful and that the Bank’s pattern of obstructive behavior and lengthy delay tactics impaired and impacted Kleinpeter |2Trace and Mr. Gladney’s ability to prepare and defend this action. Thus, I do not believe that the trial court abused its vast discretion in imposing any of the sanctions under La. C.C.P. art. 1471.
The trial court, in reaching the determination that the Bank had failed to comply with its previous discovery orders, noted that the Bank’s initial search for relevant documents was admittedly inadequate and limited, that numerous e-mails and electronic documents between October 2010 and March 2012 were lost due to the failure of the Bank to follow its own policy with regard to document retention and to implement a litigation hold. The trial court also noted the inexplicable destruction of Ms. Abreo’s daily work file, the late production of the March 28, 2007 email between Mr. Tanner and Mr. Denison, and the very late production of the files of James Stringer, the Bank employee who approved the loan on note four. The trial court also noted the Bank’s representation to the trial court at the September 10, 2012 hearing on the motion to compel that “we can’t produce what we do not have,” yet was, nonetheless, in possession of a disk containing thousands of newly discovered documents that was not disclosed to the defendants and also the Bank’s continual withholding and late production of documents as of the date of the hearing.
Notably, the record before us contains two discovery orders: the October 23, 2012 judgment and the January 8, 2013 judgment. In both judgments, the trial court granted the motion to compel filed by Kleinpeter Trace and Mr. Gladney, wherein they sought to compel the Bank to fully respond to their previous discovery requests. In the October 23, 2012 judgment, the Bank was “further” ordered to produce to Kleinpeter Trace and Mr. Gladney (1) the identity and policies for the Bank’s insurance carriers; (2) any and all documents previously withheld or redacted by the Bank under La. R.S. 6:333(I)(2); (3) the documents referenced in Ms. Abreo’s March 12, 2012 affidavit; and (4) the complete files oflsMr. Bagwell that were maintained by the Bank. In addition, the Bank was further ordered to allow for the redeposition of Mr. Denison and other Bank employees and to “[pjrovide Kleinpeter [Trace] with specific information as to exactly what efforts [the Bank] has made to obtain the backup electronic files and preserve electronic information with a litigation hold.”
In the January 8, 2013 judgment, the Bank was further ordered to deliver to the court a complete, unedited, un-redacted copy of the disk containing an estimated *643 5.2 gigabytes of electronic documents by December 21, 2012 and to produce all re-, spónsive, non-privileged electronic documents store or otherwise maintained on the disk by January 7, 2013. In addition, the trial court’s oral ruling from the December 17, 2012 hearing, it stated that it was “going to give [the Bank] 10 days to completely respond to what I think initially was a 2010 discovery request.”[2]
According to the testimony and evidence in the record, on October 20, 2010, Klein-peter Trace and Mr. Gladney propounded its first set of discovery to the Bank, which requested among other things, all documents, including emails, relating to loans by Mr. Tanner, Mr. Gladney, and Klein-peter Trace, and their |4related entities. On October 25, 2010, the Bank made an attempt to locate and preserve documents, but the search was limited to documents in the custody of four individuals and resulted in very little information. The Bank subsequently admitted that this search was inadequate, and that as a result of the inadequate search, numerous documents in the custody of other bank employees were lost or destroyed.
On January 12, 2012, approximately sixteen months after this suit was filed and Kleinpeter Trace and Mr. Gladney had issued their initial discovery request, Mr. Denison was deposed. During this deposition, Kleinpeter Trace and Mr. Gladney were made aware of, for the first time, the existence of the March 28, 2007 email from Mr. Tanner to Mr. Denison, when Mr. Denison claimed that this email was Klein-peter Trace’s application for the loan associated with note four. A copy of the March 28, 2007 email from Mr. Tanner to Mr. Denison was provided to Kleinpeter Trace and Mr. Gladney the day after the deposition (January 13, 2012). Subsequently (on April 3, 2012) another copy of the March 28, 2007 email was provided to Kleinpeter Trace and Mr. Gladney; however, this second copy of the email was different than the first copy produced the day after Mr. Denison’s deposition, and it included handwritten notations that were not on the first. No explanation for the two versions of the email have been pro *644 vided to Kleinpeter Trace and Mr. Glad-ney, and the Bank has not produced a copy of the March 28, 2007 email in its native form. The authenticity of the document remains an issue in the case.
Mr. Stringer, the Bank employee who approved the loan on note four, was deposed on February 14, 2012. At his deposition, Mr. Stringer testified that all of his files had been produced; however, almost a year later, on January 14, 2013 (approximately twenty-six months after the initial discovery request), another copy of Mr. Stringer’s desk file was produced to Klein-peter Trace and Mr. Gladney. | sThis copy of Mr. Stringer’s desk file contained handwritten notes that were not previously produced and therefore, Kleinpeter Trace and Mr. Gladney did not have that information available to them during any of the depositions that they had previously taken.
In addition, on February 22, 2012, the Bank filed a motion for summary judgment with regards to note three and note four, and in that motion, relied on the affidavit of Ms. Abreo. Thereafter, Klein-peter Trace and Mr. Gladney sought copies of the documents relied on by Ms. Abreo in her affidavit on the basis that their initial discovery request was broad enough to include such documents. However, before the Bank produced the documents, the file was inexplicably destroyed while in the custody of the Bank, which resulted in the trial court imposing an adverse presumption with regard to the contents of Ms. Abreo’s daily work file.
The deposition of Mark Bagwell was scheduled for April 4, 2012. However, the day before his deposition, the Bank produced a significant number of new documents (including the second, but different copy of the March 28, 2007 email), and several days after that produced another set of new documents. Based on this belated production, Kleinpeter Trace and Mr. Gladney had to cancel the depositions of Mark Bagwell and other Bank employees so that they could adequately , review the new documents produced.
On March 22, 2012, approximately seventeen months after the commencement of litigation, the initial discovery request by Kleinpeter Trace and Mr. Gladney, and the Bank’s initial search for documents, the Bank, at the request of its counsel, expanded its search for additional documents and emails relating to the Kleinpeter Trace loans. On April 27, 2012, as a result of this expanded search, the Bank found additional and created a disk containing approximately 5.2 gigabytes of electronic documents, consisting mostly of emails and spreadsheets, |fior roughly 500,-000 pages of documents. The Bank delivered the disk to its counsel on May 3, 2012; however, the Bank’s counsel did not adequately ascertain the contents of the disk and the existence of the disk was not disclosed to either the trial court or Klein-peter Trace and Mr. Gladney at the September 10, 2012 hearing on the motion to compel. Instead, at a conference between the counsels for the parties on October 25, 2012, the counsel for the Bank revealed that it had thousands of pages of documents that it had not produced, which was contrary to its representations at the September 10, 2012 hearing.
The Bank’s IT director, Michael Murphy, and his assistant, Ian Foster, testified that the initial search for documents (on October 25, 2010) utilized narrow search terms, which resulted in reduced and delayed production of documents. Mr. Murphy and Mr. Foster also testified that the seventeen-month gap between the Bank’s initial, limited search for documents (on October 25, 2010) and its second, expanded search for documents on March 22, 2012, resulted in the loss of and destruction of a significant number of documents and *645 emails. Apparently, this loss of documents was primarily due to the practice by employees (including Mr. Denison) of “double-deleting” emails, and as established by Mr. Foster, the fact that a litigation hold has never been instituted for documents in this case. As previously noted, the October 23, 2012 judgment of the trial court required the Bank to “[pjrovide Kleinpeter [Trace] with specific information as to exactly what efforts [the Bank] has made to obtain the backup electronic files and preserve electronic information with a litigation hold.” (Emphasis added).[3]
Following the December 17, 2012 hearing, on January 7, 2013, the Bank produced approximately 10,000 pages of documents from the disk that purportedly l7contained 500,000 pages of documents, and on January 14, 2013 (after the deadline set forth by the trial court) the Bank produced an additional 10,000 pages of documents, including the second copy of Mr. Stringer’s files. Pursuant to the trial court’s January 8, 2013 judgment, it scheduled a hearing on sanctions for March 25, 2013. Approximately three days before that scheduled hearing, the Bank requested a continuance on the basis that it had recently retained a computer expert and that the expert had uncovered thousands of emails and documents that had not been produced. The Bank was granted additional time and the sanctions hearing was scheduled for May 7, 2013. During the time between when the continuance was granted and the sanctions hearing, the Bank did not produce a single document that the newly retained expert had uncovered.[4]
Therefore, the record fully supports the trial court’s determination that the Bank willfully failed to comply with the trial court’s October 23, 2012 and January 8, 2013 judgments/discovery orders by failing to fully respond to the 2010 discovery requests of Kleinpeter Trace and Mr. Glad-ney, and further, that the Bank failed to comply with the October 23, 2012 judgment ordering it to “preserve electronic communications with a litigation hold” as the Bank had not instituted a litigation hold in this case at all. Accordingly, sanctions pursuant to La. C.C.P. art. 1471 were warranted.
With regard to the sanctions ultimately imposed by the trial court — dismissing the Bank’s claims against Kleinpeter Trace and Mr. Gladney, striking the Bank’s defenses to the reconventional demand of Kleinpeter Trace and Mr. Gladney, and the award of attorney’s fees and costs to Kleinpeter Trace and Mr. Gladney — the trial court did not abuse its vast discretion. The record reflects that the Bank violated two discovery orders, that the Bank has still not fully responded | sto the 2010 discovery request by Kleinpeter Trace and Gladney, that the trial court provided the Bank with several opportunities to comply with the discovery requests and to avoid the sanctions that it ultimately imposed at the hearing on May 7, 2013, and that the trial court thoroughly considered the four factors set forth in Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203, before imposing the sanctions that it did.
The claims dismissed by the trial court were limited to the Bank’s claims against *646 Kleinpeter Trace and Mr. Gladney relating to note three and its claims against Klein-peter Trace relating to note four.[5] Notably, none of the Bank’s claims against Mr. Tanner were dismissed by virtue of the May 15, 2013 judgment. Thus, the Bank would still be entitled to pursue its claims against Mr. Tanner for note three and note four, as Mr. Tanner personally guaranteed both notes three and four and was, apparently, the one who received or bene-fitted from the loan proceeds associated with both of those notes.[6]
With regard to striking the Bank’s defenses, the only defense that the record reveals that the Bank asserted in response to the reconventional demand of Kleinpeter Trace and Mr. Gladney was the peremptory exception raising the objection of prescription.[7] Given the Bank’s collective discovery failures, Kleinpeter Trace and Mr. Gladney were without sufficient information with which to defend against the objection of prescription, and have not been prejudiced by the dismissal of this defense, because as the trial court briefly mentioned, there was the jflissue of whether prescription was suspended by virtue of the doctrine of contra non valentem.[8]
Insofar as the trial court awarded Klein-peter Trace and Mr. Gladney attorney’s fees in the amount of $225,000.00, for the same reasons I find that the sanctions imposed by the trial court in accordance with La. C.C.P. art. 1471(A) were appropriate and not an abuse of the trial court’s discretion, I would also find that the. trial court’s award of attorney’s fees was appropriate and not an abuse of the trial court’s discretion. The trial court’s award of attorney’s fees in the amount of $225,000.00 was based on the affidavits of counsel for Kleinpeter Trace and Mr. Gladney. Although the Bank disputed that it even owed attorney’s fees and costs, it apparently stipulated that if awarded, the sum of $225,000.00 was reasonable.[9] Furthermore, counsel for the Bank conceded at the first oral argument (before the three judge panel) that this Court should affirm the award of attorney fees imposed by the trial court (as well as the trial court’s decision to impose the adverse presumption). For these reasons, I would affirm the May 15, 2018 judgment of the trial court.
Lastly, I would grant Kleinpeter Trace and Gladney answer to appeal seeking an award of attorney’s fees for this appeal.
Thus, I respectfully dissent in part.

. See Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203.

. The Bank contends that the January 8, 2013 written judgment differed from the trial court's December 17, 2012 oral reasons for judgment, in that the oral reasons for judgment required the production of all documents responsive to the discovery request of Kleinpeter Trace and Gladney, whereas the written judgment only required production of documénts from the disk. Arguing that when there is a difference between the oral reasons for judgment and the written judgment, that the written judgment controls, the Bank claims that it has complied with the January 8, 2013 judgment, and therefore, the order for sanctions cannot stand. We recognize the well-established rule that when the substance of the trial court’s written judgment differs from its oral or written reasons for judgment that the written judgment controls. Hebert v. Hebert, 351 So.2d 1199, 1200 (La.1977); see also Pitard v. Schmittzehe, 28,571 (La.App. 2nd Cir.8/21/96), 679 So.2d 515, 517 (noting that notwithstanding the principle that when the substance of the trial court’s written judgment differs from its oral or written reasons for judgment, the reasons for judgment may arguably be construed as an indication of the court’s true or actual intention). However, we do not find that there is a difference or a substantive inconsistency between the trial court's December 17, 2012 oral reasons for judgment and its January 8, 2013 written judgment. The written judgment of January 8, 2013 and the October 23, 2012 judgment specifically provide that the motion to compel filed by Kleinpeter Trace and Mr. Gladney, were granted — meaning the Bank was to completely respond to and comply with the 2010 discovery requests by Kleinpeter Trace and Mr. Gladney, as requested in their motion. This is the same relief provided for in the trial court's December 17, 2012 oral reasons for judgment, and thus, the Bank was under a discovery order to completely respond to Kleinpeter Trace's and Mr. Glad-ney’s 2010 discovery requests.

. See Everhardt v. La. Dept, of Transp. & Dev., 2007-981 (La.App. 4th Cir.2/20/08), 978 So.2d 1036, 1044 (providing that when a party has notice that certain evidence within its control is relevant to pending or imminent litigation, the party has an obligation to preserve the evidence).

. In addition, we note that counsel for the Bank admitted at oral argument that between the May 7, 2013 hearing and oral argument, the Bank had not produced any of said documents.

. Because Mr. Gladney did not personally guarantee note four, the Bank did not assert any claims against Mr. Gladney with respect to that note.

. Thus, contrary to the Bank’s argument on appeal, it did not receive "the death penalty" when its claims against Kleinpeter Trace and Mr. Gladney were dismissed because its claims against Mr. Tanner — seeking the same relief — remain.

. Louisiana Code of Civil Procedure article 1471(A) specifies that as a sanction, the trial court can refuse to allow a party to support "designated ... defenses” or strike pleadings. Since the Bank filed a peremptory exception, it has not filed an answer or asserted affirmative defenses. See La. C.C.P. arts. 928, 929, 934, 1001. Therefore, the trial court’s order striking the Bank's defenses was limited to the peremptory exception raising the objection of prescription.

. See footnote 17.

. To the extent that the wording of the Bank’s assignment of error number 6 could be construed as a challenge to amount of attorney’s fees, we note that the issue was not briefed, and therefore, under Uniform Rules. — Courts of Appeal, Rule 2-12.4, is deemed abandoned.